## HAMMOND *against* GILMORE's administrator. (*a*)

*A* and *B*, in *July*, 1839, entered into a written contract, by which *A*, who had 27,000 *morus multicaulis* trees growing on his land, agreed to cultivate them there until the 13th of *September*, when he was to deliver to *B* 15,000 of such trees, at the place of their growth, on certain terms as to price and mode of payment specified in the contract.    The trees were to be designated and counted, by the parties, and in case of disagreement, referees mutually chosen were to decide; and then the trees might, at the election of *B*, remain upon the ground a month longer.    Whenever they should be celivered to *B*, *A* was to dig them up, at his own expense.    It was finally stipulated, that if either party should fail to fulfill his part of the contract, the party so failing should forfeit and pay to the other the sum of 3000 dollars.    Below this contract was a writing, subscribed by *C*, in these words: " In case *B*, one of the parties named in the foregoing instrument, should incur the forfeiture mentioned therein, I hereby guaranty the payment of the same."    *A* cultivated the trees, and had them ready for delivery on the 13th of *September*, and was then ready

(*a*)    This case, by agreement of counsel, was argued at *Hartford, July* 9th, 1841.

*Tolland,*
*July, 1841.*

Hammond
*v.*
Gilmore's admr.

and willing to deliver them; but *B* did not appear to receive or pay for them, but at all times refused to perform the contract on his part. Held, 1. that *A* was under no obligation, by the contract, to perform any other act, as a condition precedent, than to cultivate the trees, and that every other act of his was to be concurrent with some act of *B's*; 2. that where there are mutual acts to be performed, by the contracting parties, at the same time, neither party is bound to do the first act, but each is bound to be able and ready to perform his own, and he who is thus able and ready, has a right of action against him who is not; 3. that the forfeiture specified in the contract was incurred, by *B's* refusing to accept and pay for the trees; 4. that no notice by *A* to *C* of *B's* default, was necessary to render *C* liable on his guaranty; nor 5. was it necessary for *A*, immediately after *B's* default on the 13th of *September*, to attach *B's* estate.

THIS was an appeal from the report of the commissioners upon the insolvent estate of *John Gilmore*, deceased, by *Elijah Hammond*, claiming to be a creditor of that estate and interested therein, complaining of the allowance, by the commissioners, of a claim in favour of *George Olmsted.*

The cause was tried at *Tolland, April* term, 1841, before *Church,* J.

*Olmsted's* claim was founded on the following contract, and the guaranty or undertaking thereto annexed.

" This agreement made by and between *George Olmsted* of *East-Hartford,* on the one part, and *John Hall* of *Ellington,* on the other part, witnesseth :

That said *Olmsted* hereby agrees and contracts with the said *Hall* for fifteen thousand *morus multicaulis* trees, which the said *Olmsted* has now growing on his land near his dwelling-house in *East-Hartford,* on the following terms and conditions, to wit, each tree shall be counted from the surface of the ground, and shall have all its proper roots and branches attached ; and the said fifteen thousand shall be on a fair average with the whole number of *morus multicaulis* trees now growing on said land, as it respects size and other qualities ; and they shall be hoed and cultivated, through the season, in as good a manner as the said *Olmsted* hoes and cultivates for his own use. The said *Olmsted* engages to deliver, in good order, the said number of trees to the said *Hall,* or order, at the place of their growth, on the 13th day of *September* next ; but the said trees may remain in the ground a still longer time, not exceeding one month, if requested by the said *Hall,* provided they shall so remain at his own risk ; and said *Olmsted* shall dig up said trees at his own expense, whenever they

shall be delivered to the said *Hall*, or order, and within a reasonable time after notice from said *Hall*. The price which said *Olmsted* is to receive for the aforesaid trees, is twenty cents for each tree, counted as before mentioned. The said *Hall*, on his part, agrees and contracts with the said *Olmsted*, to deliver to him the said *Olmsted*, on the actual delivery of the aforesaid trees, and in payment for the same, a good indorsed note for one half the amount of said trees, valued as aforesaid, made payable at a bank in *Hartford*, to the acceptance of said bank for discount, in three months from the 13th day of *September*, 1839 ; and for the remaining half the amount of said trees, valued as aforesaid, the said *Hall* agrees and contracts to deliver as aforesaid to the said *Olmsted*, one other like note, payable at a bank in *Hartford*, to the acceptance of such bank for discount, in six months from the 13th day of said *September*. It is hereby mutually agreed by and between the contracting parties, that in case they shall disagree as to the counting of the aforesaid trees, the counting shall be referred to the decision of two men, of whom each party shall name one, and in case such referees shall disagree in opinion, then the referees shall name a third person, and the decision of the three shall be final between the parties. And in case either party shall fail to fulfill this his agreement, the party so failing shall forfeit and pay to the other the sum of three thousand dollars. It is nevertheless agreed and understood between the contracting parties, that in case any part of the aforesaid trees shall be stolen, or, by any unavoidable accident, should be destroyed, without the fault of the said *Olmsted*, before the said 13th of *September* next, so that the said *Olmsted* should be unable to make out the number of trees herein contracted for, from the whole number growing on the aforesaid land near his house, then the said *Hall* shall receive a number of trees proportionate to the number herein specified, and to other contracts which the said *Olmsted* may make, provided he shall not contract for any number exceeding that which shall be growing on said land.

"In witness whereof, we have hereunto set our hands, at *Ellington*, the 2d day of *July*, 1839.

<table>
<tr><td>Francis Birge.</td><td>George Olmsted.</td></tr>
<tr><td>Francis Hall.</td><td>John Hall."</td></tr>
</table>

*Tolland.*
*July, 1841.*

Hammond
*v.*
Gilmore's admr.

" In case *John Hall*, one of the parties named in the forego-ing instrument, should incur the forfeiture mentioned therein, we hereby guaranty the payment of the same.

*Ellington, July 2d,* 1839.

For *The Western Silk Growing Company,*

*John Gilmore*, one of the firm."

The due execution of the contract and guaranty, by the parties thereto, was admitted. *Olmsted* claimed to have proved, that on the 13th of *September*, 1839, he had growing a large number of morus multicaulis trees, *viz.* over 27,000, of the description and quality described in the contract, at the place therein designated ; and that he was then and there ready and willing to deliver to *Hall* all the trees, and of the same description, and at the same place, provided for, by the contract ; but that neither *Hall*, nor any person for him, then, or at any time afterwards, appeared to receive such trees and pay for them ; and that, by reason of sickness and embar-rassments in his affairs, he has, at all times, neglected and refused to perform the contract on his part.

There was no evidence to show, nor was it claimed by the defendant, that *Olmsted*, on the 13th of *September*, 1839, or at any other time, set apart or actually delivered any of the trees to *Hall* ; and thereupon, the defendant requested the court to instruct the jury, that said claim ought to be disal-lowed. The court did not so instruct the jury.

The defendant claimed to have proved, that for three days next after the 13th of *September*, 1839, *Hall* had real and personal estate in *Ellington*, unencumbered, to an amount sufficient to pay *Olmsted*'s claim ; and there was no evidence to show, nor was it claimed by the plaintiff, that said claim could, at any time after said three days, have been secured by *Hall*, wholly or in part.

There was no evidence to show, that *Olmsted* had, at any time, instituted any suit by attachment against *Hall*, for the recovery of his claim ; nor that he had ever given any notice to *Gilmore* before his death, or to his administrator since, until said claim was presented to the commissioners, that *Hall* had refused or neglected to fulfill the contract on his part ; and thereupon the defendant requested the court to instruct the jury, that said claim ought to be disallowed. The

court did not so instruct the jury ; but reserved the question for the consideration of this court.

The jury returned a verdict in favour of *Olmsted's* claim against *Gilmore's* estate, to the amount of 2133 dollars, 33 cents ; and the appellant thereupon moved for a new trial for a misdirection.

*T. C. Perkins* and *Waldo*, in support of the motion, remarked, *in limine,* That as this was a claim against a *surety,* and that too for a forfeiture, it was *strictissimi juris,* and it was incumbent upon the claimant to show that the terms of the contract had been strictly complied with.  *Bacon* v. *Chesney*, 1 *Stark. Ca.* 192.  *Stratton* v. *Rastall*, 2 *Term Rep.* 370, per *Buller* J.  *Whitcher* v. *Hall*, 5 *B. & C.* 269.

They then contended, 1, That the contract had not been performed on the part of *Olmsted* so as to render the surety liable.  He engaged to *deliver* the trees, on the 13th of *September,* 1839.  For this purpose it was his duty to designate them and separate them from others in the same field, so as to vest a title to them in *Hall.*  *Smith* v. *Loomis,* 7 *Conn. Rep.* 110.  A mere *readiness* to deliver, was not sufficient. Nor was *Hall's* presence necessary to enable *Olmsted* to perform this duty.  *Olmsted* could designate the trees, though *Hall* was not there to receive them.  Besides, though *Olmsted* was bound to deliver the trees on the 13th of *September,* *Hall* was not obliged to take them away until a month afterwards.  That they were to be at *Hall's* risk, after the 13th of *September,* shows that they were then to be designated.

2. That if *Hall,* the principal, became liable to the penalty, in consequence of his failure of performance on the 13th of *September,* it was incumbent upon *Olmsted* to secure his claim, by attaching *Hall's* property ; and for want of due diligence in this respect, the surety cannot be subjected.

3. That reasonable notice to *Gilmore* of *Hall's* non-performance, was necessary in order to charge him.  It is only when the debt, which is the subject of the guaranty, has become absolute before the guaranty is given, that the guarantor is to be deemed conusant of the fact, and the creditor has nothing more to do to perfect his claim against him.  In all other cases, notice is necessary to subject the guarantor. *Read* v. *Cutts,* 7 *Greenl.* 186. 191.  Here *Hall's* liability did

*Tolland,*
*July, 1841.*

Hammond
*v.*
Gilmore's admr.

not become fixed until a long time after the guaranty was given. The following cases were also referred to. *Oxford Bank* v. *Haynes,* 8 *Pick.* 423.    *Gibbs* v. *Cannon,* 9 *Serg. & R.* 202..    *Whitcher* v. *Hall,* 5 *B. & C.* 269.    *Philips* v. *Astling* & al. 2 *Taun.* 206. 210, 211.    *Craft* v. *Isham,* 13 *Conn. Rep.* 28. 32. 34.

*W. W. Ellsworth* and *F. Parsons,* contra, contended, 1. That under the contract, and from the nature of the case, *a readiness to deliver* the trees by *Olmsted,* if *Hall* did not appear, was all that was necessary to constitute performance on *Olmsted's* part.    1 *Sw. Dig.* 290.    The trees were to remain in the ground until *Hall* was ready to receive them. To dig them up, in his absence, would be to destroy them. There was something to be done by each party, and these acts were to be done simultaneously.

2. That the guaranty of *Gilmore* imported an absolute engagement to pay for the trees, if *Hall* did not ; and no diligence by attachment was requisite to fix his liability.    It was an undertaking in regard to a *collateral* matter.    Where *A* agrees with B, that *C* shall fulfill his agreement to do certain things, the promise of *A* is as absolute as if he had agreed to do those things himself ; and if *C* does not do them, *A's* engagement is thereby broken.    *Daval* & al. v. *Trask,* 12 *Mass. Rep.* 154.    This is not the case, nor like the case of a blank indorsement of a note, by a person not a party to it, where the law raises a contract of a peculiar character ; but of a written agreement, the terms of which are explicitly stated.

3. That for the same and additional reasons, notice to *Gilmore* of *Hall's* non-performance, was not necessary.    *Williams* v. *Granger,* 4 *Day* 444.    *Breed* v. *Hillhouse,* 7 *Conn. Rep.* 523.    *Allen* v. *Rightmere,* 20 *Johns. Rep.* 365.    *Norton* & al. v. *Eastman,* 4 *Greenl.* 526.    It does not appear that *Gilmore* was then living or in the state, so that notice *could* be given to him.

CHURCH, J.    *Olmsted,* the claimant, was under no obligation, by the contract under consideration, to perform any other condition precedent, than to cultivate the trees to be deliv-

ered.   Every other act of his was to be concurrent with some
act of *Hall's.*

*Olmsted* agreed to deliver the trees specified in the contract to *Hall,* on the 13th day of *September,* 1839; that is, they were then to be designated and counted, by them both; and in case of disagreement, referees mutually chosen were to decide.   These were concurrent acts.   The trees, after being thus designated and counted, were to remain, at *Hall's* election, upon the ground, one month; and when he should choose to take them away, that is, when they should be actually delivered, *Olmsted* was to dig them up, and *Hall* agreed then to pay for them, in the manner specified in the contract. These were also concurrent acts.

The case finds, that *Olmsted* cultivated the trees, and had them ready for delivery at the time fixed by the contract, and was then ready and willing to deliver them; but that *Hall* did not appear to receive or pay for them, but *at all times* refused to perform the contract on his part.

The law arising from these facts is certainly well established, and admits of no dispute.   Although there has been some looseness of expression in the books, and perhaps some confusion of opinion on this subject, entertained; yet we suppose that the principle now clearly recognized, is, that where there are mutual acts to be performed, by the contracting parties, at the same time, neither party is bound to do the first act, but each is bound to be able and ready to perform his own; and he who is thus able and ready, may sustain an action against him who is not.   *Kingston* v. *Preston,* cited in *Jones* v. *Barkley, Doug.* 695.   *Moreton* v. *Lamb,* 7 *T. R.* 125.   *Rawson* & al. v. *Johnson,* 1 *East* 203.   *Bordenave* v. *Gregory,* 5 *East* 107.   1 *Chitt. Pl.* 311.   *Pordage* v. *Cole,* 1 *Saund.* 319. n. 4.   *Bean* v. *Atwater,* 4 *Conn. Rep.* 3., does not oppose this principle.   It would contravene the evident intention of the parties in this case, to hold, that *Olmsted* was bound to divest himself of his interest in the trees, while *Hall* refused to pay for them.

It was urged with ingenuity of argument, that this was a claim against *Gilmore* as a surety, who was responsible only if *Hall* incurred the stipulated penalty; and that *Hall* did not incur the penalty, unless *Olmsted* so tendered the trees as to vest a title to them in *Hall,* thereby rendering him responsi-

ble for their estimated value, 3000 dollars. This is a forced construction of the agreement. The penalty was incurred by *Hall*, by refusing to accept and pay for the trees. By thus refusing, he violated his contract; and *Gilmore* was responsible for such breach of contract, to the same extent as *Hall*. The principle recognized by this court, in the case of *Smith* v. *Loomis*, 7 *Conn. Rep.* 110., is not applicable here. That was not a case of concurrent acts; but the case of a promise by one only, founded upon a consideration already advanced by the other. It was a promissory note for the payment or delivery of bricks; and it was very correctly holden, that it was the duty of the promiser to deliver or tender them, in order to fulfill his promise.

A second objection to the recovery of the demand, is, that no notice was given by *Olmsted* of *Hall's* default, either to *Gilmore* or the administrator upon his estate, previous to the presentment of the claim to the commissioners.

The general rule as to the necessity of notice, is well known. Its application to practical cases, has sometimes been difficult. When the fact alleged in the pleading, is to be considered as lying more properly or exclusively in the knowledge of the plaintiff than of the defendant, then the declaration ought to aver, that the defendant had notice thereof. This is a well settled rule of pleading. None is bound to give notice to another of that which that other person may otherwise inform himself of. Nor is notice necessary, where the thing lies as much in the cognizance of the one as of the other. 16 *Vin. Abr. tit.* Notice. *P.* 5. *pl.* 10. *The King* v. *Holland*, 5 *T. R.* 606. If an act is to be done to a third person, or by a third person, who is known, no notice need be given. *Lawes on Pl.* 221. 1 *Chitt. Pl.* 320. 2 *Wms. Saund.* 62. n. 3. 3 *Com. Dig.* 675. *tit.* Pleading. 2 *Salk.* 457. 1 *Sw. Dig.* 697. *Ward* v. *Henry*, 5 *Conn. Rep.* 596. *Williams* v. *Granger*, 4 *Day* 444. *Breed* v. *Hillhouse*, 7 *Conn. Rep.* 523. In the present case, *Gilmore* was privy to the contract made by *Hall*: he, as well as *Olmsted*, knew its terms and its time of performance, and by an enquiry, could have ascertained whether a forfeiture against which he had himself stipulated, had been incurred. It was his duty, as surety, as Lord *Eldon* said, in the case of *Wright* v. *Simpson*, 6 *Ves. jr.* 734. to see to it, that his prin-

cipal performed. *Gilmore's* guaranty was not of that character, as to bring it within the rule adopted by this court, in the case of *Craft* v. *Isham*, 13 *Conn. Rep.* 28. That was a letter of credit,—a guaranty of a debt to be created or not, as others should decide. It looked entirely to the future. The defendant in that case could not know until notified, whether his guaranty had been accepted or acted upon. Nor could he know whether the plaintiff intended to look to him, or to his immediate debtor, for payment of any possible balance remaining due.

Another objection to a recovery here, is, that *Hall* had real estate for a few days after his default, which might have been attached by *Olmsted;* and that due diligence was not used by *Olmsted*, in securing his demand against *Hall.* The cases in which such diligence is holden necessary, by our law, have not been extended beyond the indorsement and guaranty of notes ; and these, we believe, are peculiar to ourselves in this state.

We do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.