### Bushnell *against* Church and another.

*A,* who was digging ore for *B,* under a parol contract to dig it as fast as *B* wanted it and could sell it, refused to proceed with his work, unless *B* would give him a guaranty for the fulfilment of the contract on his part. It was thereupon reduced to writing and signed by *B,* who procured *C* to put on it his guaranty of the same date, in these words: " I agree to warrant the performance of the within contract on the part of *B.*" The contract and guar-

anty were then handed to a third person to be delivered to *A*. In an action brought by *A* against *C*, on the guaranty, it was held, 1. that the delivery of the writings to *A* constituted the consummation of the contract, and no notice to *C* of the acceptance of the guaranty by *A*, was necessary, to perfect a right of action in *A* against *C;* 2. that demand of payment having been made of *B*, and security given by him to *C* against *A's* claim, notice to *C* that such demand had been made and that *B* had not performed, was not necessary; 3. that notice to *C* of the amount due from *B* to *A* under the contract, was not necessary; 4. that the insolvency of *B* being proved, a deed of indemnity executed by *B* to *C*, was admissible to show the time of such insolvency, and that *C* had sustained no damage by want of notice; 5. that evidence showing, that soon after *A* began to labour under the guaranty, *B*, having made sale of 600 tons of the ore, came to *A* and informed him of this fact, and directed him to dig that quantity and prepare it for market, was admissible; 6. that the information and directions so given by *B* to *A* were conclusive upon *C*.

*Litchfield*,
June, 1843.

Bushnell
*v.*
Church.

THIS was an action of *assumpsit*, founded on the following written instruments : 1. " This agreement, made between *William Church* of *Canaan*, and *Albert Bushnell* of *Salisbury*, witnesseth—The said *William*, on condition that the said *Albert* performs the agreement on his part hereinafter set forth, agrees to pay him 1 dollar 75 cents per ton, for all the iron-ore the said *Albert* shall dig and raise from the ore-bed in *Salisbury*, owned by *Samuel* and *Leman Church*, not exceeding 600 tons, and which the said *William* shall be enabled to sell and take away by the 1st day of *April* next ;— said payment to be made on said 1st day of *April*. And the said *Albert*, in consideration of the agreement of said *William* aforesaid, promises to proceed immediately, and commence raising said ore from said bed, and to continue faithfully and diligently to raise said quantity of ore, if it can be found in said bed, by the use of all reasonable efforts, as fast as the said *William* shall wish to take the same away ; said tons to be gross weight. And it is mutually agreed between both parties, that if said ore should prove worthless, or for any other cause, the said *William* should be unable to make sale of the same, the said *Albert* shall be under no obligation to continue raising the same, and the said *William* to be under no obligation to take, sell or dispose of it ; but each party shall be at liberty to terminate this contract. And it is also agreed, that the ore already raised from said bed, and which has been taken away, or which is now on hand, for which the said *Albert* has not been paid, is to be considered

as part and parcel of said 600 tons. And it is further agreed, that if, for any of the causes aforesaid, the said *William* shall not sell or dispose of the whole of said quantity of ore, within said time, that he shall, on said 1st day of *April*, pay the said *Albert* for so much thereof as he shall have sold or disposed of. Said ore to be good, merchantable ore, to be selected and sorted in conformity to the custom and usage of the *Salisbury* ore-hill, except as to the exclusion of the ore called *white-horse*, which is to be treated as iron-ore, so long as it can be sold or disposed of as aforesaid.

*Canaan*, 5th of *May*, 1839.

[Signed.] *Albert Bushnell,*
*William Church."*

2. "We agree to warrant the performance of the within and above contract, on the part of the said *William*. *Salisbury*, 5th of *May*, 1839. [Signed.] *Leman Church,*
*Samuel C. Scoville."*

The cause was tried at *Litchfield, August* term, 1842, before *Williams,* Ch. J.

The plaintiff claimed, that he had done all that by his contract he was bound to do, for which he had received no payment ; and offered testimony to prove, that after he began to dig the ore for *William Church,* the plaintiff informed him, that he, the plaintiff, should not continue to labour, unless he, *Church,* procured the guaranty, which he had agreed to procure ; and that soon afterwards, *Church* procured *Leman Church,* one of the defendants, to draw the guaranty now in suit, and to sign it with *Scoville,* the other defendant ; after which, it was signed by *William Church,* and handed to a witness to deliver to the plaintiff. To this there was no opposing testimony.

The defendants claimed, that the plaintiff must fail, because he had not given them notice that he accepted the guaranty. The court instructed the jury, that this was not necessary.

The plaintiff also offered evidence to prove, that soon after he began to labour under this contract, *William Church* made sale of 600 tons of ore, the subject of such contract, and came to him and informed him thereof, and directed him to dig and sort the same for market, as soon as possible, as he had engaged teams to take it off, as soon as it was so prepared. To this evidence of the declarations of *William Church* the

defendants objected. The court, however, admitted it, accompanied with the directions given.

The plaintiff claimed, that in pursuance of such information and directions, he immediately proceeded to dig and raise said ore, and prepare it for market, according to his engagement; and that nearly one half was taken away, in pursuance of said information. The defendants denied that in fact there ever was any such sale, and that *William Church* had given such information or directions; and claimed that if he had, it was through misapprehension of the terms of the arrangement. The defendants also claimed, that said ore was worthless, and not merchantable, but utterly unsaleable, and so the plaintiff had no right to recover of *William Church*—at any rate, he had no right to recover of them. The court instructed the jury, that whether the ore was in itself merchantable or not, the plaintiff was not accountable therefor, if it was of the kind, and prepared for market in the manner specified in the contract; and that if *William Church* had sold the ore, as the plaintiff claimed, or if he had represented to the plaintiff that he had sold it, and given directions to go on and prepare it for market, as soon as possible, as the plaintiff claimed; and the plaintiff, in pursuance thereof, had so done, according to his contract; *William Church* was responsible to him, whether the ore was valuable or not, or whether he was mistaken or not, as to the sale: that the plaintiff, acting under his directions, under this belief, must have a right to look to him for payment for his labour under the contract; and that the defendants, in the relation in which they stood to *William Church*, must be responsible for his failure to perform this contract, unless other objections prevailed.

The plaintiff also claimed to have proved, that in the fall of 1839, *William Church* became insolvent; and to prove the time when he became so, and for other purposes, the plaintiff offered in evidence a copy of a mortgage deed to the defendants and others, dated the 16th of *October,* 1839, by which, he claimed, it would appear, that the defendants were indemnified for the guaranty in question. The defendants objected to the admission of this deed, as immaterial and irrelevant; but the court admitted it.

The plaintiff also claimed to have proved, by one *Norton,* that on the 16th of *May,* 1840, he demanded payment of

*Litchfield,*
*June, 1843.*

Bushnell
*v.*
Church.

*William Church*, upon the contract—in *June*, of *Leman Church*—and in *July*, of *Scoville ;* each of whom neglected and refused to pay. The defendants claimed, that the plaintiff was bound to give them notice that demand had been made of *William Church*, and that he had refused to pay ; and that he should also have given them notice of the quantity of ore dug, and prepared for market, and actually sold. The court instructed the jury, that if they believed the testimony of *Norton*, and that the security had been given to the defendants, by *William Church*, against this very claim, as the plaintiff contended, then, notwithstanding this objection, they ought to find for the plaintiff, as no further notice was necessary.

The plaintiff had a verdict ; and the defendants moved for a new trial.

*Ellsworth* and *Church*, in support of the motion, contended, 1. That the contract of guaranty, in this case, was of such a nature that it was incumbent on the plaintiff to give notice of its acceptance by him, before a right of action accrued to him. Here was a mere proposition. The plaintiff was under no obligation to accede to the terms ; and *non constat* that he ever did. This case is clearly governed by that of *Craft* v. *Isham,* 13 *Conn. R.* 28. and is as clearly distinguishable from that of *The New-Haven County Bank* v. *Mitchell,* 15 *Conn. R.* 206. In the latter case, the parties were both present, and the writing was simultaneously delivered and accepted. It would be absurd to require formal notice of a fact, of which the party to be notified had, and from the nature of the case must have had, actual knowledge, at the time it took place.

2. That what *William Church* said to the plaintiff, was not evidence against these defendants. As the plaintiff, by the terms of the contract, was to be paid for the digging of such ore only as *William Church* should make sale of, the fact of sale was indispensable to a recovery by the plaintiff against any body. Could this be proved, by the declarations of *William Church?* He is neither a party on the record, nor a party in interest. If *William Church* had been acting as an agent, his declarations would not have been admissible against his principal ; but here, no such relation existed be-

tween him and the defendants. Nor are these declarations admissible as part of the *res gesta.* What was the *res gesta?* The *sale* of the ore. But that was a *past* transaction. This is a case of mere *hearsay* from one who was a competent witness.

3. That the charge of the court, making the defendants liable, not only for the ore which *William Church* sold, but for what he *said* he sold, was erroneous. The defendants are *sureties ;* and, as such, are not liable beyond the letter of their contract ; but the contract does not embrace the *sayings* of *William Church.* The principal cannot, by his declarations, impair any condition affecting the liability of the surety.

4. That the deed of indemnity to the defendants was improperly admitted, either to prove the fact of *William Church's* insolvency, or the time when it happened. These matters had no bearing on the liability of the defendants, and were manifestly introduced *ad cap.* with the jury. The defendants had no opportunity to show that their security was *moonshine.* The taking of security does not dispense with any duty incumbent upon the holder of a guaranty, nor vary the liability of the guarantor. *Babcock* & al. v. *Bryant,* 12 *Pick.* 133.

5. That notice should have been given to the defendants of the quantity of ore dug, and that demand had been made of *William Church,* and that he had refused to pay ; and so the court should have instructed the jury. The undertaking of the defendants is not an absolute, but a collateral and a conditional one. It is, that they will pay for the ore dug by *William Church,* if he does not. The quantity of ore dug, and the non-payment, are matters more properly in the knowledge of the plaintiff than of these defendants. On *principle,* therefore, he should have given notice of them ; and so are the authorities.

*T. Smith* and *Hubbard,* contra, contended, 1. That the guaranty of the defendants is an absolute undertaking that *William Church* shall perform his contract ; and no such notice as is contended for, is required to be given. It is not the case of a mere offer to guaranty the contract of another; but it is an absolute, unconditional guaranty of the contract of *William Church. Williams* v. *Granger,* 4 *Day* 444.

*Breed* v. *Hillhouse,* 7 *Conn. Rep.* 223.   *Hammond* v. *Gilmore's Admr.* 14 *Conn. Rep.* 479.   1 *Sw. Dig.* 698.   The contract and guaranty, in legal contemplation, were executed at the same time, for the same consideration, and are inseparable.   The guaranty is annexed to the contract, and bears the same date ; and it is unimportant whether in point of fact *Bushnell* signed the contract before or after the defendants signed the guaranty ; both take effect from the day of the date.   1 *Sw. Dig.* 178.   The transaction is not subject to the rules which govern commercial guaranties.   *Breed* v. *Hillhouse,* 7 *Conn. Rep.* 527.   The case is not like that of *Craft* v. *Isham,* 13 *Conn. Rep.* 28.   That was a letter of credit in a mercantile transaction ; a mere offer to guaranty the payment of part of the goods that should be delivered. 2 *Stark. Ev.* 648.

2. That the declarations of *William Church* made to the plaintiff, accompanied with the directions given to raise the ore, were admissible.   The declarations objected to, are the notice *William Church* gave the plaintiff that he had sold the ore, and that he must raise it, &c.   How was *Bushnell* to know whether the ore was sold, or not ?   The sale of it was a fact that lay exclusively in the knowledge of *William Church.*   It is clear, that by the terms of the contract, *William Church* was to give notice of sales, and was to give directions from time to time as to the quantity to be dug, not exceeding 600 tons.   Even the declarations of a principal as to the question of indebtedness, are admissible and binding on the surety.   *Howard* v. *Cobb,* 3 *Day* 309.   The notice given by *William Church* was part of the *res gesta*.   *Ph. Evid.* 76.   *Davies* v. *Kingsley,* 13 *Conn. Rep.* 285.   Whether the ore was merchantable or not, the plaintiff is entitled to recover, if it was of the kind, and was raised, assorted and prepared for market, in the manner specified by the contract.

3. That if *William Church* notified the plaintiff, that he had sold the ore and gave directions to the plaintiff, to go on, and dig and prepare the same for market, as the case finds, it then became the duty of the plaintiff to raise the ore ; and having done so according to the contract, he must have a right to recover for his labour of *William Church;* and the defendants, in the relation which they stand to him, must be responsible for his failure to perform this contract.   The lia-

bility of the defendants is accessory to that of *William Church ;* and they are bound for the same thing and to the same extent that he is. *Theobald,* 2. 43. 44. 45. *William Church,* by giving such notice, put it out of the power of *Bushnell* to terminate the contract. See 3d paragragh in the contract.

4. That *William Church* having become insolvent, evidence that the defendants were indemnified against this very claim, was material and relevant. This the deed at least conduced to prove. It was also relevant to show the time when *William Church* became insolvent, and to show that the defendants, as early as *October,* 1839, and long before the money was payable under said contract, had full notice that *Bushnell* had accepted their guaranty, and acted under it ; and that they had incurred a liability under their guaranty; and to show that the defendants had full notice, soon after the ore was raised, of every thing that had been done by *Bushnell,* under the contract and guaranty.

5. That the quantity of ore sold lay as much in the cognizance of the defendants as of the plaintiff. No one is bound to give notice to another of a fact, of which that other may inform himself. If an act is to be done to a third person, or by a third person, no notice need be given. *Lawes on Pl.* 221. 1 *Chitt. Pl.* 320. 1 *Sw. Dig.* 697. The defendants, by an enquiry of their principal, could have ascertained all the facts in regard to what had been done under their contract. It was their duty to see that their principal performed his contract. *Wright* v. *Simpson,* 6 *Ves. jr.* 734. *Hammond* v. *Gilmore's Admr.* 14 *Conn. Rep.* 486. Nor was it necessary for the plaintiff to give notice to the defendants, that demand had been made on *William Church,* and that he had refused to pay. But the case shows, that demand *was* made, first of *William Church,* and then of the defendants.

But the fact that *William Church,* soon after the ore was raised by *Bushnell,* and before the money became payable, assigned his property to the defendants, gave them an indemnity on this very claim, and became insolvent, is a sufficient answer to all the questions of notice raised by the motion. *Bond* v. *Farnham,* 5 *Mass. Rep.* 170.

WILLIAMS, Ch. J. The defendants claim that they are not liable on this guaranty, because *Bushnell* did not give them notice of his acceptance thereof; and rely upon the case of *Craft* v. *Isham* in support of this claim. If this contract falls within the principles of that case, it must be governed by it; for we have no reasons to be dissatisfied with the authority of that case. That was strictly a commercial guaranty, or a mere offer or proposal to guaranty, in which case notice must be given. We do not think this is a case of that character. Here, the plaintiff was actually at work for *William Church,* digging ore; he refused to proceed with his work, unless said *William* would procure the guaranty he had promised; and under these circumstances, *William Church* procured one of these defendants to put into writing his contract with the plaintiff, dated 9th of *May,* 1839; and the defendants execute upon the back of it a writing of guaranty of performance, of the same date; which writing was signed and handed to a witness to deliver to the plaintiff. We cannot consider this as a mere offer to guaranty, founded upon a future acceptance by the plaintiff. But the situation of the parties, the date of the contract, as well as its terms, all concur to show, that it was intended as a contemporaneous act on the part of all concerned. When it was drawn, *Bushnell* was labouring under contract with *William Church.* Upon that contract, he claimed, he was to have a guaranty, and enforced this claim, by threatening to withdraw from it, *William Church* then procures the contract to be put in writing; by the terms of which, the existing agreement between the plaintiff and *William Church* is recognized; for it was agreed, that security should be given as well for what had been done, as what was promised to be done by the plaintiff, in digging this ore. When then this contract was signed, and handed to the plaintiff, it must have been intended, that it should be for security for his past, as well as for his future services; and the defendants certainly must have understood, that this was in compliance with a previous contract. There was, indeed, no evidence when the plaintiff signed the contract; and we do not think such evidence was necessary. If he never signed, it could be of no importance; for his claim against *Church* was made to depend entirely upon performance, on his part. But if his signature was important, the fact that

the writings all bear one date, is *prima facie* evidence that it was all one transaction, unless the contrary is proved; and no such proof is before us. Instead then of being a prospective commercial guaranty, like that in *Craft* v. *Isham*, it much more resembles the case of *The New-Haven County Bank* v. *Mitchell*, decided at the last term, where it was held, that the delivery of the instrument was not an incipient step in the formation of the contract, but the result of previous negotiation and agreement, and constituted the very consummation of the contract. 15 *Conn. Rep.* 219. The case of *Wilder* v. *Savage*, recently decided in *Massachusetts*, by the learned judge of the supreme court of the *United States*, also bears upon this, as well as other points in the case. There, *Bruce* wanted from Mr. *Austin*, a credit upon the plaintiff for 200*l.*, which *Austin* agreed to give, if the goods procured should be consigned to the plaintiff. *Bruce* would also furnish a personal guaranty for 500*l.* The defendant gave this guaranty; and the letter of credit was given upon which this suit was brought; and judge *Story*, fully admitting the law as to the necessity of notice upon a guaranty for future advances, held, that it was inapplicable to that case ; for the agreement to accept was contemporaneous with the guaranty, and indeed constituted the consideration and basis thereof. 1 *Story's R.* 32. We think, therefore, that this objection cannot prevail.

2. But it was claimed, that the plaintiff had not proved a demand upon *William Church*, and notice to the defendants that he had not performed. It was claimed, on behalf of the plaintiff, that he had proved, by one *Norton*, that he made demand of payment of *William Church*, in *May*, 1840, and soon after, of the defendants. The defendants claimed, that no notice was given them of the demand upon *William Church*, nor of the quantity of ore dug by the plaintiff, and prepared for market, and sold. Upon this point, the jury were instructed, that if they believed *Norton's* testimony, and that security was given to the defendants against this very claim, no further notice was necessary. This was done to give the plaintiff the advantage which he claimed from that testimony.

The objections were, that they were not apprised of the extent of the plaintiff's demand, nor that *William Church* had been called upon.

As to the first, we know no rule which requires the plaintiff to present the defendants, with the particular amount due. It was formerly held, by the superior court, that before one town could sue another for supplies for a pauper, they should exhibit a bill of these supplies in writing; but this court decided, that this was not necessary—reasonable notice only should be given. *Newton* v. *Danbury*, 3 *Conn. Rep.* 559. If therefore, any notice was necessary, it cannot be claimed, that the amount need to be shewn, unless the defendants admitted a liability to pay as guarantors.

But it is claimed, that the defendants should have been informed, that *Church* had not paid, and that demand had been made on him for payment : in other words, that the same strictness of notice, except as to time, is required, in such a case, as upon a bill of exchange. The defendants became guarantors, not only of the solvency of *William Church*, but that he should perform his contract. The demand upon them to pay, imported a notice that he had not performed his contract, and was a reasonable notice. But no notice was necessary. It was their duty, as sureties, to see that the principal performed. This subject has been so recently discussed, in the case of *Hammond* v. *Gilmore's Admr.* 14 *Conn. Rep.* 479. as not to call for further remark. There, *Olmsted* contracted to deliver to *Hall* and others certain trees growing on his land, next fall; *Hall* to pay 20 cents for each tree ; and if either party failed, to pay 3000 dollars. *Gilmore* guarantied the payment by *Hall.* There was no evidence that *Olmsted* ever gave *Gilmore*, or his administrator, notice of *Hall's* failure to perform his contract, or that he had performed his ; and this court held, that it was not necessary ; that *Gilmore* was privy to the contract made by *Hall*, and was bound to ascertain for himself whether a forfeiture against which he had stipulated, had been incurred. 14 *Conn. Rep.* 486. We are not able to distinguish the case before us upon this point from that.

If, however, notice was necessary, the rule in the case of negotiable paper as to demand and notice, has but a feeble and qualified application to a guaranty. In the former case, says Judge *Kent*, the want of demand and notice will prevent a recovery, unless the plaintiff can show some legal excuse ; but in the case of a guaranty, the rule is, that the want of

notice must have produced some loss or injury to the guarantor. 3 *Kent's C.* 123. So it has been held, in a variety of cases, in *Great-Britain,* and our sister states. *Warrington* v. *Furbor,* 8 *East,* 242. *Swinyard* v. *Bowes,* 5 *Mau. & Sel.* 62. *Oxford Bank* v. *Haynes,* 8 *Pick.* 423. *Gibbs* v. *Cannon,* 9 *Serg. & R.* 202. *Van Wart* v. *Wooley* & al. 3 *B. & Cres.* 439. (10 *E. C. L.* 145.) The recent decisions in the courts of the *United States,* make it unnecessary to cite other authorities. The rule is well settled, that the guarantor, even of a promissory note, whose name does not appear on the note, is bound without notice, where the maker was insolvent at its maturity. There must not only be a want of notice, but there must be some loss or prejudice sustained thereby. *Reynolds* v. *Douglas,* 12 *Pet. R.* 497. *Wildes* v. *Savage,* 1 *Sto. R.* 22. And it would seem from these authorities, that the defendant, before he can insist upon this want of notice, must prove it has been some prejudice to him ; for in *Reynolds* v. *Douglas,* the court say his liability continues, unless he can show he has sustained some prejudice, by want of notice of a demand on the maker and non-payment ; and in the last case, Judge *Story* says, " It is not shown, nor as far as I know, is it pretended in argument, that notice punctually would have been of any advantage to the defendant, or that he has sustained any damage thereby." On this point, therefore, the defendants cannot object to the charge.

In connexion with this point, we notice an objection which was taken to the copy of a deed of *William Church* to the defendants, to prove the time of his insolvency, which was objected to and admitted. The proof of *William Church's* insolvency had been admitted, without objection. The plaintiff wanted to prove *when* he became so ; and the defendants objected to the admission of this deed as immaterial and irrelevant, tending to prove no fact of importance in the case. The plaintiff claimed, that insolvency being proved, the *time* of such insolvency might also be proved ; and that there having been no objection to the proof of insolvency, they ought not to object to the proof as to the time of insolvency ; and further, that the fact that *William Church* being insolvent, before the time of the performance of this contract, and conveying his property to indemnify the defendants against it, they could not complain of the want of notice.

After having denied that the principal was insolvent when this contract came to maturity, it certainly became proper, if not necessary, for the plaintiff, when the defendants claimed they had no notice, to show they had not suffered damage from the want of it, or that the damage was trifling. And the insolvency of *William Church*, together with the fact that he had conveyed to them property to secure them against this very claim, was all important to the plaintiff, if the notice was not sufficient ; and the time of the insolvency was important, to show that it happened before the time when the plaintiff's claim arose. We can, therefore, see no valid objection to this evidence.

The plaintiff also offered testimony to show, that soon after he began to labour under this guaranty, *William Church* made sale of 600 tons of the ore, and came to him, and informed him of this fact, and directed him to dig and sort the same for market, as soon as possible. The defendants objected to the declarations of *William Church*, claiming, that they did not prove the fact of a sale—at all events, not as against them ; that the evidence was merely hearsay ; and *William Church* ought to be called as a witness. The court, however, admitted the testimony. That this would have been proper evidence against *William Church*, if the suit had been against him, there can be no doubt ; and if the defendants had signed the obligation with him, as surety, instead of warranting his performance, it would have been proper as against both.

It is said, however, that as *William Church* is neither party nor witness, his declarations are not evidence against these defendants ; and it is insisted, that they warranted he should pay for the ore he had sold, not that which he *said* he had sold. To determine the weight to be given to this argument, we must look at the relative situation of these parties. *William Church* hires *Bushnell* to dig ore as fast as he wants it, and can sell it ; and is to pay him only on condition that *Bushnell* complies with his contract ; and the defendants guaranty that *William Church* shall perform ; in other words, they will pay, if he should be bound to pay, and does not. *William Church*, then, is the man, whom all the parties agree to look to, as the person to receive and sell the ore, and to direct how fast it shall be got out. *Bushnell*, to comply with this

contract, must get it out as fast as *William Church* sells it, or he can have no claim. How is he to know how fast *William Church* wants it got out, otherwise than by the orders or directions of *William Church?* Supposing *William Church* directs him to hasten the work, for he has sold the ore; would it be a sufficient reason for *Bushnell's* delaying the work, that he had no proof that *Church* had actually sold the ore? As between these men, must it not be sufficient evidence of the fact of sale, that he for whose benefit this clause in the contract was introduced, directed the man he had employed to go on, for he had made the sale? Would not *Church* be forever estopped from denying it? Would he be admitted to say, that the plaintiff went on, confiding in his word, but he deceived him, or was himself deceived or mistaken? Who ought, in justice, to bear the consequence of such a mistake? There can be but one opinion.

*Bushnell* is labouring under *William Church's* directions, and to receive payment only in case he follows them, with a right, however, if in his opinion, his interests require it, to stop, after notice given. Lulled into security, by the information of *William Church*, that he has sold the whole quantity, he refrains from giving notice, raises the whole quantity, and when he calls for his pay, is told, that *William Church* was mistaken—that he thought he made the sale, but it has turned out otherwise. The man denies it, and he has no evidence of it. Who shall bear this loss? The man, who, by his direction, has been induced to do the work, or the man who directed him to do it, under the affirmation that the sale was made? *William Church* must be estopped, as much from averring he had made a mistake, as from averring he had told a falsehood; for the mistake, though not as criminal, is precisely as injurious to him who was the subject of it. An estoppel by an act *in pais*, is as complete as by a deed. An acceptance of a lease, by a man, or an acknowledgment that a certain woman is his wife, will bind the one accepting the lease, as tenant, or the other, as husband. 2 *Esp. Ca.* 637. 3 *Conn. R.* 47. So if a person represents himself as owner, it is immaterial whether he was so or not: having so represented himself, he is responsible to that extent. *Helme* v. *Smith*, 7 *Bing.* 709. [20 *E. C. L.* 300.] So if one stands by, and sees his land sold at auction, and encourages another to bid,

*Litchfield,*
June, 1843.

Bushnell
*v.*
Church.

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1843.*

Bushnell
*v.*
Church.

he shall be estopped from controverting the validity of the sale. *Helme* v. *Smith,* ut supra. 7 *S. & R.* 467. So where one gave to another a bill of parcels of certain goods, with a certificate that he held them on storage, he was estopped to say he never had such goods. *Chapman* v. *Searle,* 3 *Pick.* 38. *Bonaffé* v. *Woodberry,* 12 *Pick.* 456. So if a medical man passes himself off as a physician in *England,* he can maintain no action for his fees; for, says Lord *Ellenborough,* he must take the character *cum onere. Lipscombe* v. *Holmes,* 2 *Campb.* 441. So, where property being libelled in the admiralty court, the plaintiffs procured their clerk to claim it as his own, and then brought a suit for the proceeds. It was held, the plaintiffs were estopped, by their own act, in setting up and establishing the defendant's claim in a court of admiralty, from now turning round and insisting that it was their own. *DeMetton* v. *DeMello,* 12 *East,* 234. S. C. at *Nisi Prius,* 2 *Campb.* 420. It is said, that though these declarations are admissible against *William Church,* yet they are not admissible against the defendants. As confessions of *William Church,* they may not be admissible, and on the trial, the confessions were ruled out; but his declarations accompanying his directions to get out the ore, were received as part of the *res gestæ.* The declarations of an agent, acting in the course of his business, are constantly admitted against his principal. Thus, when a bailiff had, on his warrant, acknowledged he had received the money, and directed a discharge in a suit against the sheriff; this was held to be good evidence, though it was claimed the bailiff should be called. *Perchard & al.* v. *Tindall,* 1 *Esp. Ca.* 394. So the declaration of a clerk in a banking-house as to alterations made in the plaintiff's pass-book, was evidence against the principal. *Price* v. *Marsh & al.* 1 *Car. & P.* 60. (11 *E. C. L.* 313.) So where the president of a bank called upon the defendant to pay a note, which the defendant claimed was paid, and upon examining the books, the president declared himself satisfied that this claim was correct; it was held, in an action upon the note, that the declaration of the president was proper evidence, being part of the *res gestæ.* It was an admission made in the business of his agency, in respect to the very matters committed to his charge. *Bank of Monroe* v. *Field & al.* 2 *Hill* 445. The power of *William Church,* in this

case, was surely as great in relation to the subject of this ore, as the president's was as to that note : both were acting upon their proper business, and within the scope of their authority. In *Newell* v. *Roberts*, which has been cited by the defendants, the principle was recognized, that the acts or declarations of an agent, in the course of his agency, were admissible, constituting part of the *res gestæ ;* but it was held, that *Newell* was not the agent of the defendants, much less of the creditors who signed the receipts.  13 *Conn. R.* 72.

In the case of a surety in a probate bond, a judgment against the principal was held conclusive evidence against the surety, unless fraud could be shown in obtaining it, though it was urged, that it might have been obtained upon the confession of the principal.  *Willey* v. *Paulk*, 6 *Conn. R.* 74. And in *Drummond* v. *Prestman*, 12 *Wheat.* 516. where such a judgment was given in evidence, and also an account stated by the principal, while alive, it was held, that that account might be given in evidence against the guarantor.  The judge says, the guaranty purports to be something more than the mere suretyship for debt.  The words are " I guaranty to you the conduct of my son."  It partakes, therefore, of the nature of a bond for the faithful discharge of a duty ; and it cannot be doubted, that in proving the fact of the breach of the condition of such a bond, the confessions of the principal, after his death, would be evidence.  In that case, the principal being dead, it was not necessary to go further, though it is intimated, that the case of *Perchard* v. *Tindall* would go far to show that the same rule would operate, had the principal been alive.  That certainly would be of no importance, unless it was the duty of the plaintiff to call him as a witness to prove an actual sale, instead of proving his declarations of a sale accompanying his directions to go on with the work.  Having shown that the latter was sufficient to authorize the plaintiff to proceed in the work, the former proof would become unnecessary ; and the testimony of *William Church* to his acts or declarations is no higher species of proof than that of any other witness to such acts or declarations : of course, the plaintiff could be under no obligation to call him.  And in the case of *Deming* v. *Carrington*, 12 *Conn. R.* 1. it was decided, by this court, that where the defendants claimed title to land under *Cowles*, the

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1843.*

Bushnell
*v.*
Church.

plaintiff might prove the acts and declarations of *Cowles,* while owner and in possession, though *Cowles* was alive and might have been called.

It was said, further, that if this testimony was admissible against these defendants, it might be rebutted; in other words, that the defendants might show, that there was no sale of the ore. No evidence of that kind was offered by the defendants, and ruled out by the court ; but the jury were told, that if *William Church* represented to the plaintiff, that he had sold the ore, and directed him to get it out as soon as possible, and the plaintiff had done the same ; the plaintiff, having in pursuance of these orders done the work, would have a right to look to *William Church* for pay for his labour, whether *Church* had in fact sold or not ; and that the defendants, having promised that *William Church* should perform his contract, must be responsible for his non-performance ; and this, perhaps, warrants the construction given by the defendants to that part of the charge. We think the charge, on this point, was correct. The defendants, having warranted performance on the part of *William Church,* must be considered privy with him, so that if he has not complied with his engagement, they must be equally responsible with him. And although there may be cases where a party who has asserted a claim, may show he was mistaken, or where another's interest cannot be affected ; yet we understand the rule to be, that where the representations are such that another party may be presumed to have acted upon them, or upon the faith of them, and the party himself has gained some advantage, such representations are conclusive. See note (*b*) to *Bacon* v. *Chesney,* 1 *Stark. Ca.* 194. In conformity to this idea, *Bailey,* J., in *Shaw* v. *Picton,* says, " If an agent, employed to receive money and communicate to his principal, renders an account from time to time, which contains a statement that the money has been received, he is bound by that account, unless he can show, that that statement was made unintentionally and by mistake." " When an agent has deliberately and intentionally communicated to a principal, that the money due to him has been received, he makes the communication at his peril, and is not at liberty afterwards to recover the money back again." 4 *B. & Cres.* 715. (10 *E. C. L.* 443. 450.)

*William Church* made this communication to the plaintiff;

and upon the strength of it, the plaintiff waived his privilege of terminating the contract, and went on with his labour. It would, therefore, be most flagrant injustice, to say, that the plaintiff should sustain the loss of his labour performed in good faith, in pursuance of his undertaking, and under the direction of *William Church*, the man with whom he contracted, whether that loss arose from the fraud or from the mistake of said *Church*. We know of no principle of law, any more than of justice, which requires such a construction. The court, therefore, are satisfied, that no new trial ought to be granted.

In this opinion the other Judges concurred, except CHURCH, J., who gave no opinion, being related to one of the parties.

New trial not to be granted.