CASE 26—PETITION ORDINARY—FEBRUARY 4.

# Levi vs. Mendell.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. The assignment of a note on which a guaranty of payment is indorsed, passes to the assignor only an equitable title to the guaranty.

2. The objection that the plaintiff is but the equitable owner of the obligation sued on is waived, unless made by answer or demurrer.

3. The indorsement of a note in blank authorizes the holder to write a guaranty of payment over the name indorsed, if the indorser thereby intended to become bound as guarantor, and such intention may be proved by parol. (3 *B. Mon.*, 466 ; 2 *Met.*, 216.)

4. A guarantor of a note payable at a specified time and place, is not entitled to notice from the holder of its non-payment. (1 *Leonard*, 105, *&c.*)

DEMBITZ & BIJUR, for appellant, cited 1 *Met.*, 213 ; 13 *B. M.*, 392 ; 18 *B. M.*, 537 ; 28 *Penn. Stat. R.*, 189, 447 ; 26 *Barb.*, 455 ; 6 *Indiana*, 478 ; 2 *Met.*, 297 ; 1 *Met.*, 570 ; 2 *Met.*, 558 ; 3 *Met.*, 314.

J. R. GREEN, for appellee, cited 3 *B. M.*, 465 ; 1 *Met.*, 213.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Lu. Leeskind executed the following note to J. Gideon :

"$759 50.                    LOUISVILLE, KY., *June* 28, 1860.

"Sixty days after date I promise to pay to the order of J. Gideon seven hundred and fifty-nine dollars and fifty cents, for value received, negotiable and payable at the Crescent City Bank of New Orleans.

"LU. LEESKIND."

On which note is the following guaranty for the breach of which this suit was brought :

"I guarantee the payment of the within.

"D. MENDELL."

Gideon assigned the note to appellant.

The petitioner avers the due presentment and protest of the note for non-payment, and notice thereof to defendant Mendell; also, that he had demanded payment of Mendell before suit.

Mendell alleges, in his answer, "that when Leeskind was about to excute the note, I was requested to become his surety, and to sign my name on the face of the note as security. I refused to do so, but said that I would sign my name as assignor on the back of the note, and I did sign my name as assignor on said note, and not otherwise, and said Gideon accepted the note on that condition. When I signed my name on the back of the note, the words 'I guarantee the payment of the within,' were not written on the note."

He concludes by pleading that said guaranty is not his act and deed. He also denies notice of protest, but admits the demand of payment from him.

The clerk of Gideon was the only witness introduced. He stated, substantially, that when Leeskind proposed to purchase the bill of goods, and execute his note at sixty days, payable at the Crescent City Bank, he was answered that such paper could not be used; that some party was desired on the paper to whom Gideon could look for payment at Louisville. Leeskind then asked if Mendell would do. On receiving an affirmative answer, he took the note and went out; soon after returned with Mendell's name on the back of the note without any writing above it. The court then instructed the jury, "that the presumption of law was, that the defendant's name signed in blank created no other liability than that of assignor, and that it devolved upon plaintiff to prove a contract of guaranty before he can recover in this action; and if they believe from the evidence that the defendant intended to be bound as guarantor, they must find for plaintiff."

It may be remarked that if this be a guaranty, it was to Gideon, and only the equitable title passed by his assignment of the note. Yet, as Levi was the holder and equitable owner of the guaranty, a defect of parties is waived by the answer without objections, as prescribed by the Civil Code.

In *Needham vs. Page*, 3 *B. Mon.*, 466, where Tellary executed to Needham a note for $100 negotiable and payable in four months at Mechanics' Savings Bank of Louisville, with Page's name in blank on its back, and that the words "I guarantee and go security for the payment of the within, October 15, 1839," were written above his name, just before bringing the suit on said covenant, this court held, as Page may have indorsed his name as an accommodation indorser for Needham, and to give it currency, or to have it discounted at the institution where payable, or may have signed his name with a view to guaranty the payment of the note upon the consideration passing from the payees to the maker of the note; and the proof not showing whether the one or the other was the object, and "in the *absence of all proof* as to the object intended, or

motive or consideration upon which the indorsement was made, an authority to write over the name of the indorser a guaranty of the debt secured by the note *will not be implied*."

In *Kellogg vs. Dunn, &c.*, 2 *Met.*, 216, this court correctly said that when the appellees placed their names on the paper in question, they did so with the intention of becoming bound to some extent or in some manner; and that such intention, if not inconsistent with the writing, may be established by parol evidence.

In *Weller vs. Baurman, MS. opin., Win. Ter.* 1862–3, this court recognized the right of the holder to write above the name on the back of the note a guaranty, because the proof tended to establish that such was the intention; and as the signing of a name on the back of a note was to be regarded as done for some purpose, and not merely as an idle act, authority to fill up the blank according to the intent with which the signing was done will be presumed.

The evidence in this case establishes that Gideon was unwilling to part with his goods without having some *party bound* to *him* other than the maker. It was not for his accommodation, or at his instance, that Mendell put his name on the note, but at the instance of Leeskind. This fact raises the presumption that Mendell put his name on the note for the benefit of Leeskind, and corroborates the statements of the clerk that Gideon was unwilling to part with his goods unless Leeskind would procure some one to be bound to him for the payment of the money at Louisville. Beside, Mendell says, in his answer, that Leeskind applied to him to sign his name *on the face of the note as his surety*, which he refused to do, but placed his name on the back. This is a confession on the part of Mendell that he signed his name at Leeskind's instance, and for his benefit, and it must be presumed to enable Leeskind to get the goods from Gideon; and therefore his intent to become bound to Gideon in some manner must be presumed.

To regard Mendell as an assignor would be inconsistent with all these facts, and destroy his liability to Gideon. If Gideon had desired to negotiate the note, and had applied to Mendell to place his name on the note, or had he placed his

name there even in Gideon's presence, and no other controlling fact had appeared from the evidence, possibly it should be presumed an indorsement instead of a guaranty, and Mendell. held only as indorser. But it is evident that Gideon desired a surety of some kind; and with a view to secure him in some way, Mendell signed his name. If this be so, then, to effectuate the object intended, it must be a guaranty; and this being established by the proof, the power to write a guaranty above the name of Mendell must be implied.

Was it necessary for plaintiff either to aver or prove notice to Mendell of the non-payment of the debt at maturity?

As early as the reign of Queen Elizabeth the court of common pleas, in the case of *Atkinson vs. Ralfes* (1 *Leonard*, 105), held that where the defendant, in consideration of the love of his father, promised plaintiff that if he would procure the release of the father from a debt due by the father to J. S., he, defendant, would save the plaintiff harmless against said J. S. The plaintiff discharged the father by becoming bound for the debt himself, and being sued, judgment and execution had by J. S. against him, he sued the defendant. It was objected that no notice had been given defendant; but the objection was overruled, "because it was defendant's duty to procure notice." In *Holmes vs. Twist* (*Hobart*, 31), it is said that all the precedents agree that the defendant is bound to take notice of transactions between the plaintiff and third persons, who are named in the contract; although the case is different where they are not named, and where he consequently has no clue to aid his inquiries.

In *Smith vs. Goff* (2 *L. Raym.*, 1120), where the defendant promised to pay the plaintiff thirty pounds if he would deliver up a bond to a third person, notice of the delivery was held not to be essential to a recovery on the promise, because the person to whom the surrender was made was named in the contract. In *Brookbank vs. Taylor* (*Cro. Jus.*, 685), a promise to pay the rent of a farm, on failure of the tenant, may be enforced by the landlord without notice of the default of the tenant.

These decisions, say the authors of the American Leading

Cases (2 *vol.*, *p.* 58), and the whole tenor of the English authorities, would seem to show that the doctrine of notice was far from being a favorite with the common law, which was reluctant to turn suitors out of court, merely in consequence of their failure to aver that they had communicated intelligence of that which might well have been known to the defendant without their being able to prove it.

The current of American authorities seem to establish this rational and equitable rule, whilst some adopt the contrary view.

In *Lent vs. Paddleford* (10 *Mass.*, 230–39), where the defendant Paddleford had undertaken that if an execution against Barney, in favor of Lent and Falger, should be stayed until the first Monday in June following, he undertook that Barney should make his appearance at Pittsfield, either to pay said execution, or surrender himself to any officer who might then have it. Barney having made default, it was held that he who stipulates for the acts of another is bound to see that the latter fulfills the engagement made in his behalf, and may be held responsible therefor without previous notice of default.

In *Hammond vs. Gilmore's adm'r.* (14 *Conn.*, 479), where a contract for the purchase of mulberry trees, at a stipulated price, to be received on a future day, had been entered into by Hall, to be settled for with his notes, well indorsed, payable in bank at three and six months from the day of delivery, with a stipulated penalty of $3,000 if either party should fail, Gilmore became guarantor for Hall. The court said Gilmore was privy to Hall's contract; he knew its terms and time of performance, and, by an inquiry, could have ascertained whether a forfeiture against which he had himself stipulated had been incurred. It was his duty as surety, as said by Lord Raymond in *Wright vs. Simpson* (6 *Ves.*, *Jr.*, 734), to see to it that his principal performed.

No one is bound to give notice to another of that which that other person may otherwise inform himself. Nor is notice necessary where the thing lies as much in the cognizance of one as the other. (16 *Vent. Abr.*, title *Notice*, *p.* 5, *Pl.* 10; the *King vs. Holland*, 5 *T. R.*, 606.) If an act is to be done to a

third person, or by a third person who is known, no notice may be given. (*Ward vs. Henry*, 5 *Conn.*, 596; *Breed vs. Hillhouse*, 7 *Conn.*, 523; *Williams vs. Grainger*, 4 *Day.*, 444.) The rule that notice need not be given of any fact which the defendant can learn for himself, is founded in reasons of policy and justice, which apply with as much force to agreements under seal as to simple contracts. (*Amer. Lead. Cases*, 2 *vol.*, 60. Many other authorities might be cited as establishing this just rule; but reference is made to 2 *vol. American Lead. Cases* for a thorough investigation of this question.

In this case the note was dated at Louisville, June 28, 1860, payable at the Crescent City Bank in New Orleans at sixty days, all of which Mendell, the guarantor, knew when he put his name on it. His guaranty is that Leeskind, the maker, will pay the amount at the time and place designated. His guaranty is broken on the failure of Leeskind, and he must take notice of such failure.

This does not conflict with the cases decided by this court on letters of guaranty where it is uncertain whether the guaranty has been accepted; and if so, for how much, and when the debts guaranteed are due; of all which, because of this uncertainty, the guarantor is entitled to notice. Nor does it conflict with that class of cases where, from the peculiar terms of the guaranty, it is construed to be a guaranty of the solvency of the debtor only, and not that he will perform according to the terms of the contract, in which case reasonable diligence to compel performance from the principal obligor, before resort to the guarantor, has been required.

The jury found for the defendant and judgment accordingly below.

The instructions of the court were erroneous, and doubtless misled the jury. Wherefore, the judgment is reversed, and the cause remanded for a new trial and proceedings in accordance with this opinion.