# THE HOME LIFE INSURANCE COMPANY

## v.

## FIDELIA E. PIERCE.

1. FORFEITURES — *not favored.* Courts of justice do not regard forfeitures with favor, and they are never enforced unless the evidence is clear that such was the intention.

2. SAME — *where the course of dealing has led party to believe a forfeiture would not be exacted.* If the practice of an insurance company and its course of dealings with the insured, and others, known to the insured, have been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event, will not be insisted on, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief.

3. INSURANCE — *acts of company leading policy-holder to believe forfeiture would not be insisted on.* Where a policy of insurance provided for forfeiture for non-payment of premiums when due, and the company received payment of the same after due, without objection, and sent out letters with the following words printed in prominent letters: "Every policy is non-forfeiting," so as to lead the assured to believe that no forfeiture would be exacted, it was *held* that these facts were sufficient to prevent the company from insisting upon a forfeiture because a subsequent premium was not promptly paid when due.

4. SAME — *when notice is required before declaring a forfeiture.* Where, by the terms of a policy of insurance on the life of a party, he was required to pay one-half of the annual premium in cash, and give a note for the other half, together with the amount unpaid of previous notes, with the interest thereon, less his dividend or share of the profits, which was to be deducted from the sum for which he was to execute his note, it was *held* that the company was bound to give the party notice of the amount for which his note was required, and the amount to be paid in money, before it could insist upon a forfeiture of the policy for a failure to give the note in renewal and make payment.

5. FORFEITURE — *when notice is first required.* In some cases, the necessity of notice before insisting upon a forfeiture, springs from the nature of the contract, though nothing be said about it. Generally, when any thing is to be done by one party on the performance of some act by the other, the latter must give notice of the act, unless it be one that carries notice of itself. Where the extent of the act to be performed depends upon facts

Syllabus.  Opinion of the Court.

within the peculiar knowledge of the other party, notice must be given by the other party before he can declare or insist upon a forfeiture provided in the contract.

6. SAME — *waiver, by insisting upon different grounds.* Where the president of an insurance company which had insured the life of a party, when written to after the death of the assured, refused to pay the policy, placing his refusal to pay upon the ground that the last premium had not been paid when due, the company knowing the facts, which ground proved to be untenable, it was *held* that this was a waiver of any ground of defense growing out of the fact that the insured engaged in navigating the Mississippi river before his death, contrary to a condition in the policy, or was evidence of a permit, in a case where the evidence on the question of a permit was conflicting.

7. AGENCY — *acts of agents of corporations, when binding.* Where a `person is held out to the public as a general agent of a corporation, and he so represents himself, and acts as such in other matters, his acts, as such, in a particular case, will bind the corporation, even though, according to his secret instructions, he may have transcended his authority.

APPEAL from the Circuit Court of Stephenson county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. SMITH D. ATKINS, and Mr. H. C. HYDE, for the appellant.

Mr. J. M. BAILEY, and Mr. J. I. NEFF, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of assumpsit, brought by appellee, Fidelia E. Pierce, in the Circuit Court of Stephenson county, against appellant, The Home Life Insurance Company, to recover upon a policy of insurance issued upon the life of Lorenzo D. Pierce, the husband of appellee.

A trial was had before a jury, resulting in a verdict and judgment against the company, for the amount of the policy.

The company has prosecuted this appeal, and insists, first, that the verdict is against the evidence; second, that the court admitted improper evidence; and third, that the court erred in

modifying certain instructions of appellant, and in giving instructions for appellee.

The two main grounds of defense relied upon by appellant on the trial of the cause were, first, that the policy of insurance lapsed before the death of the insured, by reason of a failure to pay the annual premium, due August 31, 1867; second, that the policy was rendered void, prior to the death of the insured, for the reason that he was employed as a laborer on a steamboat running on the Mississippi river, without the consent of the company.

The policy was issued on the 31st of August, 1864, to appellee, by the terms of which, in consideration of an annual premium of $65.20, to be paid on or before the 31st of August of each year, the life of Lorenzo D. Pierce was insured to the amount of $2,000, for the term of life, with participation in profits.

The policy contained several conditions, among others, the following, the non-performance of which should render it void: In case the said Fidelia E. Pierce shall not pay, or cause to be paid, the premium, as aforesaid, on or before the day herein mentioned for the payment thereof, or any note, or notes, which may be given to, or received by said company in part payment of any premium, on the day, or days, when the same shall become due, except the note given for half the annual premium, and made payable twelve months after date, or shall not renew such last mentioned note when the same shall become payable, and pay the interest or discount thereon, etc.

The policy also contained a clause, as follows: That the dividend of profits (if any), which may become payable, by virtue of this policy, to the holder thereof, shall be applied towards the payment of the note taken for half premiums aforesaid, and if this policy shall cease, or become null or void, the said Fidelia E. Pierce, her heirs, etc., shall be liable to pay to said company the amount of all notes taken for premiums which shall remain unpaid, except the balance remaining unpaid on the note taken

for half premiums, and made payable at twelve months from date, and that the said last mentioned note is to be canceled by the said company on the surrender and cancellation of said policy.

Under this plan of insurance, the policy-holder was entitled to share in the profits of the company ; the annual premium was to be paid, one-half in money, and a note, with the interest paid in advance, given for the other half, due in one year, at the expiration of which, and when another annual premium became due, one-half was paid in cash, the other half added to the note previously given, the dividend the policy-holder entitled to, deducted, and a new note given for the balance.

This was the construction given to the contract by the company, as shown by the manner in which it transacted the business annually with appellee.

It also appears that the company had a peculiar form of note, which it prepared for the policy-holder to execute each year, at the home office in New York.

This new note, together with a statement of amount due, it was the custom of the company to forward to the policy-holder each year, before the annual premium became due.

At the expiration of the first year, and on the 31st of August, 1865, the deceased renewed his note for $65.20, which was the half premium for the two years, and paid in cash $36.87, being in full of the half premium of $32.60 then due, and interest on the $65.20, for which he had renewed his note.

On the 31st of August, 1866, when the time for renewal and payment of premium arrived, deceased did not at the time pay or renew.   On the 24th of October, 1866, it appears deceased had lost the statement received from the company; he, however, sent to the agent at Milwaukee, $35. In reply, he received a letter, dated October 26, 1866, from the agent of the company, as follows :

" L. D. Pierce, Esq.   Dear sir :   We have a letter written at Rock Island, October 24, conveying $35 currency, to pay on

policy 5940, and this is your number; therefore, we send your old note and Home receipt, with a twelve month renewal note, which please sign and return.

" The amount of cash due at this time is............. $37 30
" Paid....................................... 35 00

" Yet due.................................... $2 30

· " Please send it with note."

In 1867 no notice was sent to appellee, or the deceased, of the amount, cash or note, which the company required paid, in order to renew.

The deceased had been absent from his home in Rock Island for about two weeks, and returned on the 30th day of August, 1867, unwell, and died on the 10th day of September following.

The premium that was due at that time was not paid, neither was the note renewed.

It is urged that on account of the failure to pay the annual premium that became due on the 31st day of August, 1867, when the same was, by the terms of the policy, payable, the policy was forfeited.

Courts of justice do not regard forfeitures with favor, and they are never enforced, unless the evidence is clear that such was the intention of the parties.  In May on Insurance, page 434, it is said: If the practice of the company and its course of dealings with the insured, and others known to the insured, have been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event, will not be insisted on, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief.

In 1866 the annual premium was not paid until nearly two months after it became due, and yet the money, when sent, was accepted by the company without a single word of disapprobation.

The general agent, in his correspondence with the policy-hold-

ers, used paper upon which was printed his card, a prominent feature of which was the following : " *Every policy is non-forfeiting.*"

The deceased had in his possession several letters written by the general agent of the company, containing the above inscription, in prominent letters.

It is a matter of but little importance what was really meant by insurance men by the use of such language; when the advertisement was sent broadcast over the country, its effect upon policy-holders could be none other than to inspire confidence that forfeitures would not be insisted upon by the company.

In connection, however, with this fact there is another prominent feature in this case which, when the two are taken together, was sufficient upon which to base the verdict of the jury.

Was the company under obligation to give the insured notice of the amount which he was required to pay, before it could insist upon a forfeiture ?

It is insisted by appellant that the amount to be paid annually was $65.20, as specified by the policy, and the company was under no obligation to accept of the insured each year his note for one-half of the premium.

It is apparent, however, from an examination of the various provisions of the policy, that such was not contemplated, and is not a proper construction of the contract.

Under the policy the insured had the right to " participate in the profits." The policy provides " that the dividend of profits which may become payable by virtue of this policy to the holder thereof, shall be applied to the payment of the note taken for half premium." This provision is an express recognition of the right of the policy-holder to give his note for one-half of the premium, and have it paid from a particular fund. It was a right the company was bound to recognize, and could not deny.

In the conditions, for the non-performance of which the com-

pany had the right to avoid the policy, was a failure to pay any note which might be given, " except the note given for half the annual premium, and made payable twelve months after date."

Here is another direct recognition of the right of the policy-holder to give a note for one-half of the annual premium.

These provisions clearly show that it was the intent of the contracting parties that the insured was not required to pay only one-half of the annual premium in cash and that his note was to be taken for the balance.

When, therefore, the annual premium became due August 31, 1867, the insured did not, and could not, know what amount he was required to pay until he heard from the company. It was known to him that he would have to pay one-half of the premium, $32.60, but the interest on the renewal of the note had to be paid, and this amount depended, of course, upon the amount of the note, and the size of the note could not be known until the company had declared and deducted the dividend from it.

We are, therefore, of opinion that, notwithstanding the fact that the policy is silent as to notice, the company could not insist upon a forfeiture of the policy for non-payment until it had given notice to the insured of the amount he was required to pay and the amount of the note for renewal.

This view is fully sustained by the authorities. In Parsons on Contracts, vol. 2, page 669, the author says, " In some instances the necessity of notice springs from the nature of the contract, though nothing be said about it."

Generally, where any thing is to be done by one party on the performance of some act by the other, this other must give notice of said act, unless it be one that carries notice of itself.

In *Vyse* v. *Wakefield*, 6 Mees. and Wels. 442, the doctrine is stated in the following language : " The rule to be collected from the cases seems to be this, that where a party stipulates to do a thing in a certain specified event, which may become known to him, or with which he can make himself acquainted, he is not

entitled to any notice, unless he stipulates for it; but, when it is to do a thing which lies within the peculiar knowledge of the opposite party, then notice ought to be given to him." See also *Hammond* v. *Gilman*, 14 Conn. 486.

The next question arising upon the record is, whether the policy was forfeited by reason of the insured having been employed on a boat, navigating the Mississippi river. In the summer of 1865 the insured commenced working on a boat as steward. On the payment of $10 appellant granted him a permit to engage in the employment for one year from July 6, 1865.

This permit would expire on the 6th day of July, 1866. Appellee claimed that it was renewed and kept in force, while the company insist that no renewal was established.

It was, therefore, a question of fact, purely, for the jury to determine, from all the evidence, whether the permit was renewed.

In October, 1866, when the deceased remitted the agent of the company $35, the agent of the company acknowledged receipt of the money, and stated that there only remained due $2.30, and a renewal receipt was sent, by which the policy was renewed until the 31st day of August, 1867. If at this time there was any thing due on the permit, it is strange nothing was said on the subject by the agent.

On the 6th day of September, 1867, while the deceased was sick, his brother wrote the agent of the company a letter, to know the amount then due. In reply a letter was received, dated September 14th, 1867, as follows:

"I have yours of the 6th; we had lost your address. Please send me a draft for the cash on your

| | |
|---|---|
| "Policy, due August 31st........................ | $37 73 |
| "Cash for permit............................... | 10 00 |
| "Total cash............................... | $47 73 |

"Also send the new note, and I will, in return, send old note, receipt, and permit to run."

Here is a clear admission that no statement had previously been sent to the deceased; and it is but reasonable to presume that if any thing was due on the permit for the previous year, the agent would have made a demand for the amount.

In addition to this, after the general agent had visited appellee, and was in possession of all the facts, and had communicated with the president of the company, and after appellee had also written the president, she received a letter from him, in which he declines to pay the policy, solely upon the ground that the premium due August 31st, 1867, was not promptly paid when due.

The jury, with all these facts before them, were warranted in arriving at the conclusion that the permit to run on the river had been renewed by appellant.

After the death of Mr. Pierce, the general agent of appellant called upon appellee for the purpose of adjusting the loss; and upon the trial appellee was called upon to testify to what was said by the agent, and she testified as follows:

" I told Mr. Kellogg, at our interview at Rock Island, of the time of my husband's being taken sick, and that by reason of our not receiving a notice, we had forgotten the time when the premium became due. Mr. Kellogg told me that the reason we were not notified was that the old secretary had died, and the new secretary had got hold of the old records and notified us at Winona instead of Rock Island. He said he had never had a case like this one, but that as the company were all honorable men, he had no doubt they would pay it. We talked of my husband's last illness, but I cannot remember what was said. He said he would correspond with the company and let me know what they would do."

This testimony, as well as the letter written by the general agent after the death of Pierce, was objected to, on the ground that the general agent had no authority to adjust losses or bind the company by any act he might do in regard to a loss.

The agent Kellogg represented himself to be, and was held

out to the public by the company as, the general agent. He seemed to have the entire control of the business of the company in the North-West; he wrote letters and signed receipts as general agent.

We understand a general agent to be one empowered to transact all his principal's business. 1 Pars. on Cont. 40.

As Kellogg was held out by the company, and acted in the capacity of general agent, even if the secret arrangement between him and the company was that he had no authority to adjust losses, that cannot relieve the company from being bound by what he said and did while acting in the capacity of general agent.

We have carefully examined the instructions given for appellee, and those of appellant, which the court modified, and we are satisfied the law involved in the case was fairly given to the jury.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*