SEAMANS *v.* THE NORTHWESTERN MUTUAL LIFE INSURANCE Co.

*(Circuit Court, D. Minnesota.   August 4, 1880.)*

1. LIFE INSURANCE—FORFEITURE—NEW AGENT.—A life insurance policy, containing a provision that the same should "cease and determine" if the premium should not be paid when due, is not forfeited by the failure to pay such premium on the day it is due, where the company neglected to inform the assured of a change in the agent authorized to receive the same after they had adopted a rule to give such notice in all cases, and the assured tendered the premium in due season to the former agent of the company, and was unable to find the new agent after reasonable inquiry.

2. SAME—SAME—REASONABLE TIME.—In such case the assured was entitled to a reasonable time before a forfeiture could be declared.

3. SAME—SAME—SAME.—The failure to pay such premium for 60 days after it was due was not, under such circumstances, an unreasonable time, where the company had waived the time of payment in the previous year, and it did not appear at what time, if ever, the assured was informed of the place of payment.

*Charles J. Bartleson,* for plaintiff.

*Geo. L. & Charles E. Otis,* for defendant.

McCRARY, C. J.   This is an action upon a policy of insurance upon the life of one Albert P. Seamans, dated April 24, 1874, for $1,000.

At the December term, 1879, there was a trial by jury and a special verdict, upon which judgment was rendered for the plaintiff for the sum of $6.09 only, that being a dividend due the insured at the time of his death.   The court held that the plaintiff could not recover on the policy because the same had been forfeited by the non-payment of the premium which matured April 24, 1877.   The policy provides that if the premiums shall not be paid when due the policy "shall cease and determine."

A motion for a new trial was made by the plaintiff upon the ground that the judgment was not warranted by the evidence, and was contrary to law, and also on the ground of newly-discovered evidence.   The court, while doubting the sufficiency of the newly-discovered evidence to change the result, sustained the motion and granted a new trial, with a

view especially to a further consideration of certain questions of law arising in the case. The case is now submitted to the court (the parties having waived a jury) upon the special verdict and the newly-discovered evidence subsequently taken. It is conceded that the premium which became due on the fourteenth of April, 1877, was not, in fact, paid, and that unless plaintiff has shown a waiver of payment, or that the non-payment resulted from the fault of defendant, the policy sued on is forfeited. The facts relied upon by plaintiff to excuse the non-payment of this premium, as they appear from the special verdict and the testimony since taken, are as follows:

*First.* The premium due April 14, 1876, was paid without objection after maturity, as hereinafter stated. With this exception, all the premiums were paid as they matured prior to April, 1877.

The defendant's agents always notified assured in advance of the time when the premium would become due, and in said notice stated the amount of cash dividend which came due to the assured at the maturity of the premium.

*Second.* The assured, having moved to Minneapolis, was informed in 1876, before the premium was due, that he could pay the same at the Hennepin County Savings Bank, which he did on the fourteenth day of April, 1876, nearly one month after the same was due, which payment was received by the agent of defendant without objection.

*Third.* The Hennepin County Savings Bank, early in March, 1877, ceased to be the defendant's agent to collect said premiums, and no notice was given the assured of that fact, or that any other agent had been appointed.

*Fourth.* In March, 1877, the defendant notified the assured that the premium on the policy would fall due April 24, 1877, and that a cash dividend of $6.09 would be due him at that time, which he could apply on the premium, and after deducting this amount pay the balance; but no notice was given the assured of any agent to whom the premium could be paid in Minneapolis, and from whom a renewal receipt could be obtained. The notice did, however, require payment to be

made "at the office of the agent of the company in Minneapolis, Minnesota."

*Fifth.* That the First National Bank of Minneapolis immediately succeeded to the agency of the Hennepin County Savings Bank for the collection of premiums for the defendant company, and was authorized to collect the premium due April 24, 1877, and was the only agent at that place. The plaintiff had no actual notice of the agency of said bank. The defendant had a state agent at St. Paul.

*Sixth.* That plaintiff and insured were informed by William B. Mason, agent of defendant at Minneapolis, shortly before the premium of 1876 became due, that it was not material that the same should be paid when due, but that it might be paid at any time within several months thereafter without prejudice to their rights.

*Seventh.* Silas A. Seamans, father of the assured, testifies that, at the request of the assured, he went to Minneapolis to pay the premium due April 24, 1877. He cannot fix the exact date, but says that it was not after the maturity of the premium. He went to the Hennepin County Savings Bank, where payment had been made the year before, and offered to pay the amount, but was informed that that was not the place to pay it, and that he would probably have to go to St. Paul. Although he made inquiry of several persons besides the bank officers, with whom he conversed, he failed to find the agency in Minneapolis, and was not informed that the First National Bank of Minneapolis was the agent.

*Eighth.* The assured was killed June 23, 1877, by a boiler explosion on Lake Minnetonka, Minnesota, and the premium due April 24, 1877, was not paid or tendered either before or after his death.

Upon these facts should the court declare and enforce a forfeiture of the policy on account of the non-payment of the dividend due April 24, 1877?

In *Insurance Co.* v. *Eggleston,* 96 U. S. 572, Mr. Justice Bradley, in delivering the opinion of the supreme court, said:

"We have recently, in the case of *Insurance Co.* v. *Norton,* (*supra,* 234,) shown that forfeitures are not favored in the

law, and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, although it might be claimed under the express letter of the contract." And it was, accordingly, in that case held that where an insurance company had been in the habit of notifying the assured of the time when and place where premiums were to be paid, he had reasonable cause to expect and rely on receiving such notice, and that the company was estopped from setting up that the policy was forfeited by the non-payment of a premium of which no such notice was given. In the present case it appears that in 1876 the company notified the assured that the Hennepin County Savings Bank, at Minneapolis, was its agent, to whom premiums should be paid. In March, 1877, the defendant appointed a new agent at Minneapolis, and when notices were, in that month, sent out to policy holders, the company adopted a rule to send a circular with each notice, informing the assured of the place where and the agent to whom payment should be made. The jury find that this circular was not sent to Seamans. He did not, therefore, know of the change of the agency, and naturally supposed he was to pay to the party to whom he had paid the year before. He sent his money in due time to that party. He did not send it to St. Paul, at which place he was informed there was an agent, because he had been notified that he must pay to the agent at Minneapolis. That the company understood it to be their duty to inform him of the change of the agency, is clear from the fact that they adopted a rule to do this in all cases, and omitted it in his case by oversight.

Under the circumstances, I do not think the assured was bound to hunt for an agent in the city of Minneapolis to whom he could make payment. If he was bound to make

reasonable inquiry, I think the evidence shows that, through his agent, he did so. The agent he sent to Minneapolis to pay the premium swears that he made considerable inquiry, and names several persons to whom he applied for the name and location of an agent to whom payment could be made.

It is very clear to my mind that if the defendant had sent to the assured the circular notice of the change of agency which it sent to other policy holders, and which it intended to send to him, he would have sent his money to the proper place, and would have paid his premium in due time. It was, therefore, the fault of the defendant that the premium was not paid. This is not a case of indifference or wilful neglect on the part of the assured. He was not only willing, but anxious to keep his contract. He raised the money in time and sent it to Minneapolis for the purpose of making payment. The person sent was unable to find the new agent, of whose appointment, name, and place of business both he and the assured were ignorant. He was, therefore, excused from making payment on the day the premium was due. It is said, however, that he continued to neglect payment until the day of his death, about 60 days after the maturity of the premium. If he was excused from making payment on the day of maturity by the facts and circumstances stated, then he was entitled to a reasonable time before a forfeiture could be declared. In considering what time would be reasonable, we are to bear in mind that the company had, in fact, waived the time of payment the previous year. The jury find that in 1876 the agent of the defendant at Minneapolis informed the assured that a delay of a month or two would not work a forfeiture, and the assured accordingly paid his premium for that year nearly a month after it was due, without objection on the part of defendant or its agents. Again, it does not appear at what time, if ever, the assured was informed of the *place of payment.*

Under these circumstances, I am of the opinion that a forfeiture cannot be declared on account of the delay in making payment of the dividend, the assured having been excused

from making such payment at maturity by the fault of defendant.

The following authorities show the reluctance of courts to enforce forfeitures in this class of cases, and support the general views I have expressed: *Insurance Co.* v. *Wolff,* 95 U. S. 326; *Insurance Co.* v. *Eggleston,* 96 U. S. 572; *Insurance Co.* v. *Norton,* Id. 234; *Insurance Co.* v. *Pierce,* 75 Ill. 426; *Thompson* v. *Insurance Co.* 52 Mo. 469; *Mayer* v. *Insurance Co.* 38 Iowa, 304; *Insurance Co.* v. *Warner,* 80 Ill. 410; *Insurance Co.* v. *Robertson,* 59 Ill. 123.

Judgment for plaintiff for amount of the policy and interest.