## HERMAN SHAFFNER ET AL.

### v.

## HARVEY EDGERTON ET AL.

1. PRESUMPTION FROM FACTS.—BURDEN OF PROOF.—Where it appeared without dispute that an agent after receiving payment of certain checks given by defendants, reported his collections to one of his principals and paid over to him the proper amount of money as the money collected, and that the principal received it as such and credited it to the proper accounts. *Held*, that such facts raise a *prima facie* presumption that the moneys received by the agent from the defendants were in due course of business paid over to the principals and the burden of proving that the moneys paid over, were, in fact, other moneys belonging to the principals, which the agent was wrongfully withholding from them, was upon the principals.

2. RATIFICATION OF AGENT'S UNAUTHORIZED ACTS.—Even if an agent had no authority to indorse checks, still, if after having done so and drawn the money, the money was paid over by him to and received by the plaintiffs, the principals, they will not be permitted while holding the money, to allege the agent's want of authority, but will be deemed to have ratified his unauthorized acts.

3. RIGHTS OF LEGAL HOLDER OF BANK CHECK.—The payee or legal

Shaffner v. Edgerton.

holder of a bank check, upon presentation of such check for payment, becomes the owner and entitled to receive the amount called for by the check, provided the drawer at the time has that amount on deposit.

4. AGENCY—INDORSEMENT.—If a party holds possession of a negotiable instrument which is not indorsed by the payee or which has been indorsed by him specially to another and has not been indorsed over by such indorsee but has been placed in the holder's hands as agent for the purpose of receiving payment, such agent may present it for payment and payment to him will be valid. Such indorsement would be necessary to the negotiation of the instrument, but would not be necessary to the validity of the payment. Whether the agent in this case had authority to indorse the checks was immaterial, as the validity of the payment depended upon his authority to collect them.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed June 27, 1883.

Messrs. MOSES & NEWMAN, for appellants; that a draft or check drawn to the order of a fictitious payee is payable to bearer, cited Vere v. Lewis, 3 T. R. 182; Grant v. Vaughn, 3 Burr. 1516; Fatlock v. Harris, 3 T. R. 174; Meinet v. Gibson, 3 T. R. 481; Willets v. Phœnix Bank, 2 Duer (N. Y.), 130; Foster v. Shattuck, 2 N. H. 447.

The payee or holder of a bank check is bound to present the same for payment at the banking house to which it is addressed before he can sue thereon or maintain any form of action: Morse on Banking, 29; Grant on Banking, 54; Downes v. Phœnix Bank, 6 Hill (N. Y.), 299; Brahm v. Adkins, 77 Ill. 263.

Appellees must prove as a condition precedent to their right to maintain this suit, that the drawers had sufficient funds to meet their checks when presented for payment by the person entitled to receive the money thereon: Morse on Banking, 29; Downes v. Bank, 6 Hill, 297; Johnson v. Bank, 1 Harr. (Del.) 117; Farmers' Bank v. Bank, 10 Gill. & J. 422; Watson v. Bank, 8 Metc. (Mass.) 217; McEwen v. Davis, 39 Ind. 109; Girard Bank v. Bank, 39 Penn. St. 92.

Checks drawn to the order of an assumed corporate name contrary to the statute, are void: C. Mut. Co. v. Rosenthal, 55 Ill. 89; Penn v. Bornman, 102 Ill. 524.

Messrs. FLOWER, REMY & GREGORY, for appellees; cited Adams v. King, 16 Ill. 169; Munn v. Burch, 25 Ill. 35–40.

BAILEY, P. J. Harvey Edgerton and Ambrose E. Sloan, the plaintiffs in this suit, at the time of the transactions in controversy, were copartners in the business of manufacturing and selling veneers, said business being carried on under the name of The Garden City Veneer Mills. Herman Shaffner and Abraham G. Becker, the defendants at the same time were copartners doing business as bankers under the firm name of Herman Shaffner & Co. This suit was brought to recover the amount of fifteen bank checks drawn upon the defendants by various parties, payable to the order of The Garden City Veneer Mills. The cause was tried before the court below without a jury, and a judgment rendered in favor of the plaintiffs for $552.71, the full amount of said checks and costs.

The business of the plaintiffs' firm was managed and carried on exclusively by said Sloan and one E. A. Burch, said Edgerton being also the proprietor of a livery stable, and devoting his entire time to the management of that business. Sloan kept the books of the firm, and Burch made most of its sales and collections. The checks in question were received by Burch from various customers of the firm, in payment of their accounts for merchandise, and Burch, as each check was received, indorsed thereon the name of The Garden City Veneer Mills, and presented it for payment at the defendant's bank and received payment thereof. The checks were thereupon canceled by the defendants, and returned to the various drawers, and were afterward obtained from the drawers by the plaintiffs.

It is claimed by the plaintiffs that Burch had no authority from them to indorse the checks, and, consequently, that his indorsement was void, and the payment to him ineffectual. The evidence is clear that Burch was an agent of the plaintiffs' firm possessing very large powers. The mercantile transactions of the firm are shown to have been almost exclusively under his personal control. Sloan testifies that he was em-

ployed to solicit orders, and to attend to any outside business the firm might wish him to do; that he had authority to make deposits for the firm in bank, and frequently made such deposits; that he sold nine tenths of all the goods manufactured by the plaintiffs; that all matters of discounts and differences between the plaintiffs and their customers were left to him for adjustment; that on some occasions in the absence of the witness, he indorsed checks received from customers and deposited the same in bank to the plaintiffs' credit.   It also appears from the testimony of various of the plaintiffs' customers, that they dealt with Burch exclusively, and knew no other person as representing the plaintiffs, and there is evidence of admissions by Sloan, that Burch was Edgerton's representative in the business; that because Edgerton could not give the business his personal attention, he had placed Burch there to represent him.

This testimony, it would seem, goes very far, to say the least, toward establishing competent authority in Burch to indorse the checks received by him in the collection of the firm accounts, and to present the same so indorsed for payment; but as we are disposed to rest our decision on other grounds, we do not deem it necessary to decide that question.

The evidence further shows that, as to nearly all of said checks, Burch, after drawing the money, reported to Sloan the amounts as collected upon the accounts of the drawers, and handed over to him amounts of money corresponding with the amounts so reported as collected, and that Sloan entered such payments to the credit of the several drawers of the checks, which, with some small collections afterward made by him, balanced said accounts.   Said checks were of various dates, running from August 30, 1881, to March 1, 1882.   A few days after the date of the last check, Burch left the plaintiffs, a defaulter to the amount of about $2,000.

It seems to us that this evidence, uncontradicted as it is, establishes the defendants' defense of payment.   Even if Burch had no authority to indorse the checks, still, if after having done so and drawn the money, said money was paid over by him to and received by the plaintiffs, they will not be permit-

ted, while holding the money, to allege his want of authority, but will be deemed to have ratified his unauthorized acts.

But it is urged that the moneys paid over by Burch, may not have been the moneys received by him from the defendants, but other moneys which he had embezzled from his employers, and that the receipt of such moneys by the plaintiffs can not estop them from setting up his want of authority to indorse the checks. It may be conceded that if the moneys paid over by Burch were in fact the plaintiffs' moneys which Burch had collected from other sources, and was wrongfully withholding from them, such payment can not be taken advantage of by the defendants. It would then be merely a delivery by Burch to the plaintiffs of their own money, with which the defendants had no concern, and the fact that the plaintiffs applied it to the accounts of the drawers of the checks, under a mistaken notion as to its identity, can not affect their rights as against the defendants.

But the record, in our judgment, wholly fails to establish the facts here supposed. It appears without dispute that Burch after receiving payment of the checks, reported his collection to Sloan and paid over to him the proper amount of money as the money collected, and that Sloan received it as such and credited it to the proper accounts. These facts standing alone admit of but one inference, viz.: that the moneys received by Burch from the defendants were in due course of business paid over to Sloan. They at least raise a *prima facie* presumption to that effect, sufficient to throw upon the plaintiffs the burden of proving that the moneys paid over were in fact other moneys belonging to the plaintiffs which Burch was wrongfully withholding from them. Have they made such proofs?

No attempt whatever was made by the plaintiffs to show from what source Burch derived the identical moneys paid over to Sloan, or to what fund they belonged, although as we must presume all accessible proofs on that subject were in their own hands. That question was left to rest upon the declaration of Burch sworn to by Sloan himself that they were the moneys collected of the persons owing the accounts for

Shaffner v. Edgerton.

which the checks were given. The only fact shown having any bearing upon the question is, that some days after the last check was collected and accounted for, Burch left and went to parts unknown, and that a subsequent investigation of his accounts showed him to be a defaulter in the sum of about $2,000. How the $2,000 was made up, or when or how it was taken by Burch, is nowhere shown. So far as appears, the entire defalcation may have taken place subsequent to the date of the last check, or the entire sum embezzled may have been drawn from sources entirely outside of the checks in question. It must then be assumed as the only proper conclusion to be derived from the evidence, that the moneys paid by the defendants to Burch on the checks, was by him handed over to the plaintiffs, and that it is still in their possession. Such being the fact, it would be the height of injustice to require the defendants to pay it to them a second time.

But the judgment must be reversed also for another reason:

The rule in this State is, that the payee or legal holder of a bank check, upon presentation of such check for payment, becomes the owner and entitled to receive the amount called for by the check, provided the drawer at the time has that amount on deposit.

The bank check operates as an equitable, if not a legal, assignment or transfer to the holder of the check, of so much of the money of the drawer on deposit in the bank subject to his draft at the time of its presentation for payment, as may be necessary to pay it. The rights of the holder of the check and of the bank become fixed at the time the check is presented for payment. Fourth National Bank v. City National Bank, 68 Ill. 398; Munn v. Burch, 25 Id. 35. To enable the holder of a check, then, to recover its amount of the bank in his own name, it must appear that the check has been presented for payment, and that at the time of such presentment, the drawer had on deposit subject to his draft, an amount of money sufficient to pay it.

How stand the proofs upon these points? The only presentment of the checks shown was that made by Burch. Assuming that the bank could properly pay the money and Burch

receive it only upon presentment of the checks properly indorsed, then, if Burch had no authority to indorse the checks, his indorsements were unavailing and his presentment a nullity. It follows logically that there has been no presentment for payment which can avail to fix the liability of the bank. If, on the other hand, Burch's presentment was sufficient in law, payment was not refused but made, and the liability thereby discharged. If there is a want of proof of a sufficient presentment, there of course can be no evidence as to whether the drawers had funds at the time of presentment sufficient to meet the checks.

We have discussed the case thus far upon the theory that the bank could not make a valid payment of the checks to Burch in the absence of a valid indorsement by the payees. We are far, however, from giving our assent to that proposition. The presentment of the checks by Burch for payment was not a negotiation of the checks and so did not require the indorsement of the payees. Burch, as is admitted, was their collecting agent and was clothed by them with ample powers to collect moneys becoming due them in the course of their business. In collecting these checks at the bank he was merely standing in their place. If the plaintiffs had presented the checks to the bank in person and the bank had seen fit to pay said checks to them without indorsement, can there be a doubt that such payment would have been effectual? And could it be any less so when made to an agent clothed with ample authority to stand in their place and collect the money for them?

Mr. Daniel, in his excellent treatise on the law of negotiable instruments, lays down the rule as follows: "Any *bona fide* holder of a negotiable instrument, or any one lawfully in possession of it for the purpose of payment, may present it for payment at maturity. A notary public, or any agent duly authorized, may make presentment of the instrument for payment; and it is well settled that his authority need not be in writing." Again he says, "If the party holding possession of a negotiable instrument which is not indorsed by the payee, or has been indorsed by him specially to another, and has not been indorsed over by such indorsee, but has been placed in the

holder's hands as agent for the purpose of receiving payment, such agent may present it for payment, and payment to him will be valid; even, as it has been held, although made in a manner different from that provided for in the instructions to the agent. The fact that the instrument is not indorsed by the owner is, as has been held, under such circumstances, of no importance. Such indorsement would be necessary to the negotiation of the instrument, but would not be necessary to the validity of the payment." And again, " certainly if he (the person to whom the payment was made) were in fact the owner's agent, a payment to him would be valid, although he had produced no other evidence of the fact than the unindorsed instrument at the time when he received it." 1 Daniel on Negotiable Instruments, secs. 572–574.

Whether Burch had authority to indorse the checks was immaterial, and the validity of their payment to him depends solely upon whether he had authority to collect them. Upon this question, there can be, we think, no reasonable doubt. The payments were therefore valid, and discharged the bank from all liability to the plaintiffs for the moneys covered by the checks.

The finding of the court below was contrary to the evidence, and the judgment must therefore be reversed and the cause remanded.

Judgment reversed.