The Stuyvesant Insurance Company, Plaintiff in Error,
v. The Ayers National Bank of Jacksonville, Illi-
nois, Defendant in Error.

Gen. No. 8,557.

Heard in this court at the October term, 1932. Opinion filed October 17, 1932. Rehearing denied January 4, 1933.

SILBER, ISAACS, SILBER & WOLEY, for plaintiff in error; SAMUEL LEVIN and HERBERT W. HIRSH, of counsel.

BELLATTI, SAMUELL & MORIARTY, for defendant in error.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This suit is an action of trover which was brought by the plaintiff in error, Stuyvesant Insurance Company, in the circuit court of Morgan county to recover the amount of two checks from the Ayers National Bank of Jacksonville which had been issued for insurance premiums, and accepted and cashed by the bank. It appears from the evidence that the checks were for the respective amounts due for the premiums on two policies of insurance which had been secured and written by the Corn Belt Insurance Agency and had been made payable to the order of the Stuyvesant Insurance Company. The insurance company claimed the right to recover the amount of the two checks from the Ayers Bank on the ground that the checks which had been given for an insurance premium for policies to be issued by the insurance company had been made payable to the order of the insurance company, and that the agency had no authority to indorse the checks

for the company; and that the Ayers Bank, by accepting and paying the checks without the insurance company's indorsement, had deprived the insurance company of the money which the checks called for and thereby was guilty of trover in converting the money of the insurance company. The parties to the cause waived a jury trial, and the case was tried by the court. The court, after hearing the evidence, found the issues for the defendant in error, the Ayers National Bank, and rendered judgment accordingly. This writ of error is prosecuted to reverse the judgment.

The following facts are disclosed by the record:

The Corn Belt Insurance Agency was a business organization in the City of Jacksonville; R. E. White was the owner of the agency, and his wife, Hazel G. White, was his assistant in conducting the business of the agency. The wife particularly took care of the office work; kept the books, and also had charge of financial matters arising in the agency, looked after the bank account of the agency; made deposits and drew checks on the agency bank account in due course of the business of the agency; and the bank account was kept in the name of the agency. On June 26, 1928, the insurance company, for the purpose of securing services of the Corn Belt Agency to secure and write fire insurance policies, entered into a contract with the agency to secure such business. This contract is as follows:

"Memorandum of Agreement, made this 26 day of June 1928 by and between the Stuyvesant Insurance Company and Corn Belt Insurance Agency, Applebee Bldg., Jacksonville, Ill. Agent of said Company, for the territory of Jacksonville, and Vicinity.

"Witnesseth: That in consideration of the compensation hereinafter named, the said Agent hereby agrees to faithfully represent the said Company in all matters pertaining to and within the jurisdiction and scope

of the Agency, and with fidelity to serve said Company in the capacity as Agent, using best endeavors to increase the volume and improve the quality of the business written for said Company at the Agency from year to year, and to carry out to the best of his ability all instructions of said Company.

"In consideration of such faithful services the Stuyvesant Insurance Company agrees to allow said Agent a commission on net premiums collected on policies of insurance as follows:—

"Tornado:—
    25 per cent.

"Fire:—
    "25 per cent on Dwellings and Private Barns in connection therewith and Contents of each: Flat Buildings, Churches, Schools, Colleges, Hospitals, Sanitariums, Homes for the Aged, Children's Homes and strictly Charitable Institutions and their Contents.

"25 per cent on Buildings and Contents occupied exclusively by Y. M. C. A.

"25 per cent on all risks supported by Public Taxation (including jails) (Excepting, penal and Reformatory Institutions, State and County Fair Ground Property, and risks where Power is used: other than Pumping and Lighting Stations) and the Contents of buildings not excepted above.

"25 per cent on Buildings of Brick, Stone or Concrete (Cement or Concrete Block, brick veneered or iron-clad buildings class as Frame) occupied for the following purposes: Mercantile, Hotel, Office, Lodge, Telephone Exchange or Public Hall (without stage or scenery). Property of Telephone Exchanges (where occupancy is exclusive, when in Brick, Stone or Concrete buildings).

"20 per cent on Frame, Iron-Clad, Cement Block and Brick Veneered Mercantile Buildings and Contents, on Stock in brick mercantile buildings.

"15 per cent on all other classes.

"10 per cent Contingent commission as per separate contingent commission agreement to be figured on the profits of the entire account combined for each year.

"Accounts will be rendered by the Agent for the business of each month so as to reach the said Company's office not later than the fifth day of the following month, and the balances thereunder are to be paid not later than the 15th day of the second month succeeding that for which they are rendered.

"It is further understood that this agreement shall continue from year to year unless terminated by either party. The right to resignation or removal at any time being recognized by both parties.

"This agreement takes the place of and abrogates any contract, agreement or understanding, either verbal or written of prior date between the parties mentioned therein.

"In Witness Whereof, This Agreement has been signed in duplicate by the parties hereto, the year and date first above written.

"The Stuyvesant Insurance Company
"F. N. Brown, Supt. of Agencies
"Signature of Agent
"R. E. White."

In conformity with the above contract, the insurance company issued to the Corn Belt Agency the following certificate of authority to act as its agent:

"Be it known that the Cornbelt Insurance Agency of Jacksonville in the County of Morgan and State of Illinois appointed and by these presents duly constituted Agent of The Stuyvesant Insurance Company New York Organized 1850 with full power to receive proposals for Insurance against loss and damage by fire in Jacksonville and vicinity to fix rates of premiums, to receive moneys, and to countersign, issue, renew, and consent to the transfer of Policies of Insurance signed by the Presi-

dent and attested by the Secretary of The Stuyvesant Insurance Company, subject to the rules and regulations of said Company, and to such instructions as may from time to time be given by its officers.

"In Witness Whereof, the Stuyvesant Insurance Company, has caused these presents to be signed by its President and attested by its Secretary, this 26th day of June, A. D. 1928.

"J. S. Frelinghuysen,

"President.

"Attest

"G. F. Hutchings Secretary."

The two checks referred to were part of the business transacted for the insurance company by the Corn Belt Agency. The first check was drawn by the Central Illinois Grain Company June 1, 1929, for $2,063.12, payable to the order of the Stuyvesant Insurance Company and delivered to the Corn Belt Agency in payment of the premium due on a $200,000 fire insurance policy, taken out by the grain company in the Stuyvesant Insurance Company through the Corn Belt Insurance Agency. The second check was drawn by C. R. Lewis, July 2, 1929 for $1,488.75 and made payable to the order of the Stuyvesant Insurance Company; and delivered to the Corn Belt Agency to pay the premium due on a fire insurance policy taken out in the Stuyvesant Insurance Company through the Corn Belt Insurance Agency. The checks, after delivery to the Corn Belt Agency, were indorsed for the agency by Hazel G. White, the wife of R. E. White, and were deposited in the Ayers National Bank in the due course of the business of the agency; and by the Ayers National Bank credited to the account of the Corn Belt Agency. It is the contention of the insurance company that inasmuch as neither R. E. White nor Hazel G. White had any express authority to indorse the name of the insurance company on the checks in question, the indorsement of the checks was

wrongfully made and that the checks were wrongfully accepted and paid by the Ayers National Bank; and that the Ayers National Bank, by accepting the checks for deposit and turning over to the Agency the amount of money represented by the checks was guilty of a conversion of the money represented by the checks.

The general rule of law bearing upon the question presented is as contended by the insurance company, namely, that to make an indorsement of commercial paper payable to a principal, valid when made by an agent, the agent must have express authority; but it is also well settled that this general rule of law has a recognized exception. This is pointed out in the case of *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* 199 Ill. 151. In that case the court said:

"When the authority to execute or endorse a negotiable instrument is sought to be deduced from an agency to do certain other acts, it must be made to appear affirmatively, that the signing or endorsement of such an instrument was within the general objects and purposes of authority which was actually conferred."

Applying the law cited to the facts in this case, it affirmatively appears that under the terms of the contract which the insurance company made with the Corn Belt Agency, the insurance company allowed the agency commissions for insurance written by the agency, only if the premiums were collected by the agency; and that authority was expressly conferred upon the agency by the certificate of authority to collect and to receive the moneys due the insurance company arising from the business transacted by the agency for the company; and it seems apparent that the agency could not have collected the money represented by the premium checks, which they were authorized to collect, without indorsing the checks.

We conclude that the authority to indorse the name of the insurance company for the purpose of collecting

the money was necessarily implied. Moreover, under the contract constituting the Corn Belt Agency the agent of the insurance company to transact its insurance at Jacksonville, the Corn Belt Agency became a general agent of the insurance company; and as such general agent, possessed all the powers of a general agent. A general agent has implied power to do those things necessary and proper to be done to carry into effect the purpose and scope of the agency business and to transact the business of the principal for which an agent is constituted in the usual and customary way; and as the principal could and would usually have done if the principal had been present. 2 Corpus Juris 427; *Home Life Ins. Co. v. Pierce,* 75 Ill. 426; *Phenix Ins. Co. v. Hart,* 149 Ill. 513; Mechem on Agency, par. 395.

General authority to conduct a business involving the acceptance of checks will of necessity involve implying authority to take and indorse such paper in the course of the business intrusted to the agent. 2 Corpus Juris, 629 (note a).

It may be further pointed out that one lawfully in the possession of a check may present it for payment; and payment to him will be valid; and the fact that it had not been indorsed by the owner is of no substantial importance if the person to whom payment is made was in fact the agent of the owner to receive payment; and the payment to such agent will be valid without indorsement. 1 Daniels on Negotiable Instruments, secs. 572–574. *Shaffner v. Edgerton,* 13 Ill. App. 132.

For the reasons stated we are of opinion that the finding and judgment of the trial court is in accordance with the law and the evidence, and the judgment is therefore affirmed.

*Affirmed.*